IN RE ESTATE OF KYLE CASSELMAN, DECEASED.
JAMES H. CASSELMAN, APPELLEE, V. KYLA CASSELMAN ET AL.,
APPELLANTS, DANIELE CASSELMAN, BY AND THROUGH HER
MOTHER AND NEXT FRIEND, SHIRLEY CASSELMAN MILLER,
APPELLEE.

364 N.W.2d 27

Filed March 15, 1985.   No. 83-629.

Dennis L. Arfmann, for appellants.

Clark G. Nichols of Winner, Nichols, Douglas and Kelly, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Kyle Casselman died on April 10, 1982, leaving five children surviving (four daughters: Kyla, Dawna, Cynthia, and Daniele; and one son: James). His will had been prepared by a lawyer and was executed by him on February 13, 1973. A petition for formal probate of this will was filed by Kyla in the county court for Scotts Bluff County on May 28, 1982. An amended petition was filed in the same court by Kyla on July 20, 1982. This amended petition sought formal probate of the same will and · the probate of a codicil to that will. The codicil was holographic in nature and was dated September 25, 1974. Hearing on the amended petition was set for August 12, 1982. Notice was published as to this requested formal probate and all interested persons were notified by mail.

Objections to the probate of the will and codicil were filed in the county court by Daniele, who was a minor and appeared

through her mother, Shirley Casselman Miller. On August 26, 1982, James Casselman filed a "Notice of Transfer" in the county court, and the proceeding to determine whether decedent left a valid will was transferred to the district court for Scotts Bluff County, pursuant to the provisions of Neb. Rev. Stat. § 30-2429.01 (Cum. Supp. 1984).

On September 28, 1982, in the district court, James filed his objection to the codicil to the will, but not to the will itself. On June 2, 1983, a pretrial hearing was held in the district court. The five children were present by counsel. At the pretrial hearing all agreed that there was no objection by any of the heirs or devisees to the probate of Kyle Casselman's will of February 13, 1973. James then filed a motion for summary judgment, asking the district court to find that the September 25, 1974, codicil was invalid. On June 23, 1983, hearing was held on James' motion for summary judgment. The codicil of September 25, 1974, was received at the hearing. No other testimony or evidence was received. For purposes of the summary judgment hearing, all parties agreed that the codicil was duly executed by an uninfluenced and competent testator. The district court took the matter under advisement, and on July 5, 1983, granted the motion for summary judgment. The court found that all parties had stipulated that Kyle Casselman's will of February 13, 1973, should be admitted to probate. The court further found:

> The Codicil dated September 25, 1974, to the Will of Kyle Casselman is so ambiguous and contradictory that it does not dispose of property, appoint a personal representative, revoke an earlier executed testamentary instrument or revise an earlier executed testamentary instrument and is, therefore, not a valid will and is not entitled to be admitted to probate.

The court then ordered that the will of February 13, 1973, should be admitted to probate and denied probate to the codicil of September 25, 1974. Kyla, Cynthia, and Dawna Casselman and Edgar Russell (cousin of Kyle Casselman and personal representative named in the will) as "Proponents of the Codicil" appeal from the district court's order granting James' motion for summary judgment and denying probate to the

codicil. Appellants allege in this court that the district court erred in granting the motion for summary judgment. The appellants allege that the trial court erred in finding that there was no genuine issue as to any material fact and in determining that, as a matter of law, the codicil was so ambiguous and contradictory that it was invalid and not entitled to be admitted to probate.

The facts in the pleadings showed that Kyle executed his lawyer-prepared will on February 13, 1973. This will left $10,000 to Dawna, $3,000 to an employee, and the remainder to James and Kyla. Cynthia and Daniele were specifically disinherited. Kyla and Edgar Russell were named cotrustees of James' share until he reached 25 years of age. They were also named coexecutors.

On September 25, 1974, Kyle executed the holographic codicil which is the subject of this proceeding. The codicil is four pages long. The introductory statement in the codicil sets out that Kyle Casselman declares "this to be a codicil to alter a will and testament [sic] . . . which at this time it is my feeling is necessary to alter to fit the times and the changed situations." Paragraph "1st" then states: "I hereby revoke and hold for naught any or all bequests made to and on behalf of my son James H. Casselman in my will or any other manner." In succeeding paragraphs the codicil expresses Kyle's dissatisfaction with the property settlement in a divorce case between Kyle and his former wife, Shirley (see *Casselman v. Casselman*, 191 Neb. 138, 214 N.W.2d 278 (1974)), provides that Cynthia should have a place to live and should be helped through school "by a loan of about half what a kid going through on a shoe string would get"; that "[c]ustody of James Casselman is to go to either Kyla Casselman or Edgar Russel [sic]"; and that if James were to quit high school, he "shall be provided a room, a TV. and $10.00 a month for funny books or records until he reaches legal age although if he goes to either one or the other of the executors they shall recieve [sic] the same compensation for support as the other children and the TV, Records Books and room is out." The codicil further provided that if James were to stay in school and go through college, he was to be helped through with "a nominal amount" and that

"[i]n event James over comes his laziness disinterest in property and management, sloppy and slothful living, laying around, lazyness [sic] and is not so influenced by his mother to follow in her footsteps and he has proven himself then he maybe come [sic] a joint administrator of this trust . . . ." "This trust" refers to Kyle's intention, expressed later in the codicil, that "[a]ll of the Casselman property shall be a sacared [sic] and God given trust be used, beautified and held for our successors" and "for a living and forwarding our education." Paragraph "5th" provided: "In event no one is interested in this property after the above is fulfilled then a conference shall be held equally between the Seventh Day adventist church and Harvard preferably Law School, or business School, or Divinity School to dispose or use the property . . . ."

The first issue to be resolved must be whether summary judgment was the proper remedy. We determine it was. Any ambiguity appearing in the codicil is patent rather than latent and may be found, or not found, within the four corners of the document. As stated in *In Re Estate of Florey*, 212 Neb. 665, 670-71, 325 N.W.2d 643, 646 (1982):

> A patent ambiguity is an ambiguity appearing on the face of the instrument, whereas a latent ambiguity is one outside the will. " 'A patent ambiguity must be removed by interpretation according to legal principles and the intention of the testator must be found in the will.' " [Citations omitted.]
>
> This is a patent ambiguity and it therefore becomes a question of law as to the meaning to be given to the language of the will itself. [Citations omitted.]

As this is a question of law, and since there was no genuine issue of fact, summary judgment was proper. Where an ambiguity in a codicil appears on the face of the document, the resolution of such a patent ambiguity is a matter of law and properly the subject of a motion for summary judgment if there is no dispute as to any material fact.

We next turn to the question of the validity of the codicil. The district court, after the transfer of the proceeding to that court, had authority to "determine whether the decedent left a valid will." Section 30-2429.01. A will is defined by Neb. Rev. Stat.

§ 30-2209(53) (Reissue 1979) as "any instrument, including any codicil or other testamentary instrument complying with sections 30-2326 to 30-2338, which disposes of personal or real property, appoints a personal representative, conservator, guardian, or trustee, revokes or revises an earlier executed testamentary instrument, or encompasses any one or more of such objects or purposes." The codicil in question was holographic in nature and was executed in compliance with Neb. Rev. Stat. § 30-2328 (Reissue 1979). As stated in *Brown v. Applegate*, 166 Neb. 432, 435, 89 N.W.2d 233, 236 (1958):

> It stands to reason, however, that a probate court is not required to admit to probate every instrument which may have been executed in the ceremonial form required of a will. The instrument must purport to be a will. It must purport to make a testamentary disposition of some property.

The issue, then, is whether the codicil disposes, appoints, or revokes or revises and thus is a will as defined in § 30-2209.

Paragraph "1st," which revokes previous bequests to James, is the only part of the codicil in dispute. All parties agree that after that paragraph the codicil does not effectively dispose, appoint, or revoke or revise, or do any testamentary act. The remainder of the purported codicil, after paragraph "lst," does not effectively dispose of any property, although the document does vaguely refer to a trust, whose corpus beneficiaries or purposes are not defined, nor does the codicil appoint any trustees of this trust. The codicil does, however, contain many statements which show the writer's general intent.

The trial court correctly found that paragraph "1st" was not an attempt to revoke but actually an attempt to revise. While, ostensibly, Kyle revoked all bequests to James in that paragraph, he provided in paragraph "3rd, 2nd," that James should have "a room, a T.V. and $10.00 a month for funny books" and that he should be helped through college. In paragraph "3rd, 3rd," Kyle provided that James could become a joint administrator of "this trust," with one-fourth of the benefits for his own use, if James were to overcome his bad habits. The purported codicil states conflicting methods and aims.

The rule of partial invalidity of a will is discussed in *In re Estate of Marsh*, 216 Neb. 129, 342 N.W.2d 373 (1984), where we determined that the general rule is that where part of a will is invalid, the valid provisions should be upheld unless to do so would defeat the intent of the testator and interfere with his general scheme of distribution. Clearly, Kyle did not intend to disinherit his son, James, completely but, rather, wished to dangle James' inheritance in front of him as an inducement to change his lifestyle and to provide some form of economic aid to him. Kyle's attempt at this revision is unsuccessful. To disinherit James totally would, as stated in *In re Estate of George*, 144 Neb. 887, 898, 15 N.W.2d 80, 87 (1944), "defeat the testator's intent and interfere with the general scheme of distribution." Kyle Casselman obviously intended to provide for his son, James, in some fashion. Giving effect to paragraph "1st" alone would defeat this intention. Thus, in this case, where the remaining provisions of the codicil must fail for uncertainty, paragraph "1st" also must fail with the rest of the codicil.

The codicil, having failed of its essential purpose, that is, revising a previous will, is not operative at all and is therefore not entitled to probate. The judgment of the district court is affirmed.

AFFIRMED.