Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/24/2021 08:11 AM CDT

ROBERT BOHLING, APPELLANT, V.
KIMBERLY BOHLING, APPELLEE.

___ N.W.2d ___

Filed July 2, 2021.    No. S-20-502.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. **____: ____.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Wills: Appeal and Error.** Whether a provision in a will is too uncertain to be valid presents a question of law which an appellate court reviews de novo.

4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court reaches a conclusion independent of the determination reached by the court below.

5. **Decedents' Estates: Wills.** When a will contest is transferred from the probate court to the district court pursuant to Neb. Rev. Stat. § 30-2429.01 (Reissue 2016), the district court's authority over the proceedings is limited to determining whether the decedent left a valid will.

6. **____: ____.** Issues regarding construction of the will are properly left to the probate court, except where they bear on the will's validity.

7. **____: ____.** A will's validity can be attacked on grounds of lack of testamentary capacity, fraud, undue influence, improper execution, forgery, or a subsequent revocation of the will by a later document. Additionally, the validity of a provision in a will or codicil can be challenged on grounds it is too indefinite or uncertain to effectuate any testamentary purpose of a will under Nebraska law.

8. \_\_\_\_: \_\_\_\_. Generally, in testamentary dispositions of property, both the property and the person to whom it is given must be set forth with sufficient certainty that the court can give effect to the disposition.

9. **Summary Judgment: Affidavits.** Affidavits used to support and oppose a motion for summary judgment must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

10. **Summary Judgment.** Conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.

Appeal from the District Court for Johnson County: Ricky A. Schreiner, Judge. Affirmed.

Angelo M. Ligouri, of Ligouri Law Office, for appellant.

Richard R. Smith for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

In this will contest case, Robert Bohling appeals from the district court's entry of summary judgment finding that his father left a valid will. We affirm.

## I. BACKGROUND

Willis D. Bohling (Bohling) died on March 27, 2018. He was survived by two adult children, Kimberly Bohling and Robert, as well as Robert's two minor sons. Bohling left a self-proved will,[1] dated July 13, 2015, which provided in part:

   **I, WILLIS BOHLING,** presently of rural Tecumseh, Johnson County, Nebraska, do make publish and declare this to be my Last Will hereby revoking all Wills formerly made by me.

   **FIRST:** I do hereby appoint my daughter, Kimberly Bohling, Personal Representative of my Estate. If

[1] Neb. Rev. Stat. § 30-2329 (Reissue 2016).

Kimberly Bohling is unable or unwilling to serve as Personal Representative, then and in that event, I do hereby appoint my son, Robert Bohling, Personal Representative of my Estate. In either event, I do direct that my Personal Representative shall not be required to post Bond.

**SECOND:** All of the balance residue and remainder of my Estate, whether real or personal and regardless of where situated, I do hereby give devise and bequeath unto my daughter, Kimberly Bohling. I am not unmindful of my son, Robert Bohling, but it is my Will that he receive nothing hereunder.

Paragraph "**SECOND**" contains the only dispositional provision in Bohling's will, and it is the focus of this will contest.

### 1. PROBATE PROCEEDINGS

In April 2018, Kimberly initiated informal probate proceedings in the county court for Johnson County and was appointed personal representative of Bohling's estate. Thereafter, Robert entered his appearance and objected to the application for informal probate and to Kimberly's appointment as personal representative. Robert also filed a petition seeking dismissal of the informal probate application and requesting a determination of intestacy, a determination of heirs, and appointment of a special administrator.

In his objection, Robert presented three reasons why the 2015 will should not be probated. He claimed that (1) the 2015 will was "incomplete," because it referred only to the "'balance residue and remainder'" of Bohling's estate and thus failed to make a devise of the entire estate; (2) Bohling lacked testamentary capacity when he executed the will; and (3) the will was the product of Kimberly's undue influence. Kimberly denied Robert's allegations, and the will contest was transferred to the district court for Johnson County to determine whether Bohling left a valid will.[2]

---

[2] See Neb. Rev. Stat. § 30-2429.01(1) (Cum. Supp. 2020).

## 2. District Court Proceedings

In the district court, Kimberly moved for summary judgment, asserting the will was valid and should be admitted to probate. After an evidentiary hearing, the district court granted summary judgment in Kimberly's favor, and Robert appealed. After moving the appeal to our docket, we noted that the bill of exceptions contained only Robert's evidence opposing summary judgment. Because Kimberly's exhibits had not been properly marked and received into evidence, we concluded the appellate record did not support summary judgment in Kimberly's favor, and we reversed the judgment and remanded the cause for further proceedings.[3]

On remand, both parties moved for summary judgment. At the hearing on the competing summary judgment motions, the district court received a certified copy of Bohling's 2015 will. Both parties offered affidavits, which the court received over objections. In overruling the various objections, the court stated it would not consider any evidence that lacked foundation, was irrelevant, or amounted to inadmissible hearsay or improper opinions and conclusions. As relevant to the issues on appeal, we summarize the evidence received on the competing summary judgment motions.

### (a) Kimberly's Evidence

To support her contention that Bohling's 2015 will was valid, Kimberly offered her own affidavit and the affidavit of the attorney who drafted the will, Thomas Morrissey.

### (i) Morrissey's Affidavit

Morrissey averred that he has actively practiced law in Nebraska for 59 years. Sometime in 2015, Bohling scheduled a meeting at Morrissey's office to discuss drafting a will. Bohling arrived for the meeting alone, and he and Morrissey discussed at length the nature and extent of Bohling's property and

---

[3] See *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020).

the identity of Bohling's natural heirs. Bohling expressed his intent to leave all of his property to Kimberly and to disinherit Robert, and he directed Morrissey to draft a will in accordance with those intentions. After the consultation, Morrissey was satisfied that Bohling had the capacity to make a will, and he drafted a will pursuant to Bohling's instructions.

Bohling returned to Morrissey's office on July 13, 2015, and again he was alone. Morrissey discussed the proposed will with Bohling, and Bohling appeared to have no difficulty following the discussion. After Bohling reviewed the proposed will, two witnesses joined them. While the witnesses were present, Bohling confirmed he had read the proposed will, it represented his last will and testament, he understood the attestation clause of the will, and he wanted the individuals present to witness him sign the will. Bohling also confirmed he was signing the will freely and voluntarily, he was over 18 years of age, he was of sound mind, and he was under no constraint or undue influence. Morrissey was satisfied that Bohling had testamentary capacity when he signed the will and that he was not being unduly influenced by anyone to do so.

### (ii) Kimberly's Affidavit

Kimberly averred that Bohling lived alone from 2009 until his death in 2018, during which time he managed his own finances and generally took care of his own daily activities. During Kimberly's conversations with Bohling throughout 2015, she did not observe Bohling to be unclear in his thoughts, to be unable to communicate his wishes clearly, or to exhibit any memory problems. Kimberly denied ever discussing the disposition of Bohling's property with him. She also denied encouraging Bohling to execute a will, and she averred that she did not become aware of his 2015 will until after his death.

### (b) Robert's Evidence

At the summary judgment hearing, Robert offered his own affidavit and affidavits from several of Bohling's friends.

We summarize only the portions of these affidavits that are relevant to the issues raised on appeal.

### (i) Robert's Affidavit

Robert generally averred that he and his sons had a close relationship with Bohling. They often worked together on Bohling's farm, splitting wood to heat the farm residence and helping to maintain the farm, the fencing, and the equipment. Robert's sons also helped Bohling with weekly "dog chores," and Robert's wife, a veterinarian, provided free vaccinations to Bohling's cattle.

Robert averred that "[t]hroughout my father's lifetime, and even as recently as a few months before his death, he told me everything he owned would be split 50/50 between [Kimberly] and me." By way of example, Robert averred that the tract of land on which Bohling lived "was owned by my sister and I, together, as our parents wanted it that way," and he stated that after their mother died in 2009, he and Kimberly each received some of their parents' possessions because the parents "wanted their property passed down to us equally." Robert posits that "[i]f [Bohling] had no intentions of me receiving any of his possessions, then he would not have told me which antiques, guns, farm equipment, tools, and safe deposit box to keep." According to Robert, Bohling had "specific things he wanted to leave and pass down" to his only two grandsons, and there was "no way that my father would have disinherited me, because he would have known that meant disinheriting my boys."

Robert also expressed his opinion that Bohling's 2015 will was "incomplete" because it referred only to the "'balance residue and remainder'" of his estate and not to "his entire Estate." According to Robert, "[t]here would be absolutely no way that my father would have known that 'balance residue and remainder' was going to be turned into everything he owns, and not the balance or residue that would be left over after

[his] specific intentions were carried out." Robert suggests the language of the will showed that Bohling's intentions "were to only transfer the leftovers, the remains after his two children split what he intended us to receive, just [as] he stated to us and just as been done with us throughout our entire lives."

Robert also opined that Bohling's 2015 will was the product of Kimberly's undue influence. According to Robert, Kimberly was "regularly" at Bohling's house and "the only way [Bohling] would have had a [w]ill is at Kimberly's consistent demand for one."

*(ii) Affidavits of Bohling's Friends*

Robert also submitted affidavits from four of Bohling's friends, including the woman Bohling was dating before his death. As relevant to the issues on appeal, these individuals generally averred that throughout his life, Bohling expressed his intent to divide his personal property equally between Robert and Kimberly. All of Bohling's friends described a good relationship between Bohling and Robert, and all expressed their opinion that Bohling would not have deliberately disinherited Robert. Specifically, one friend expressed that "[i]t would've . . . been completely out of character for [Bohling] to disinherit [Robert] and in turn disinherit his two grandchildren, considering how proud he always was of them." Another expressed that Bohling "always maintained a close relationship with [Robert]" and "I can securely say, that he would never have intentionally disinherited his son and grandchildren." Still another friend stated he did not "believe that there is any circumstance that in sound mind and body [Bohling] would have disinherited his son." And the woman Bohling was dating stated that she did not think Bohling "would have chosen or intended to disinherit his only son." She believed "there must have been a miscommunication, misunderstanding, or misrepresentation to [Bohling] that would have created such a circumstance."

### (c) District Court's Judgment

In an order entered June 19, 2020, the district court granted summary judgment in favor of Kimberly, finding that she met her burden of establishing a validly executed will pursuant to Neb. Rev. Stat. § 30-2431 (Reissue 2016) and that Robert's evidence failed to create a genuine issue of fact regarding the will's validity.

The court specifically rejected Robert's claim that the dispositional provision in the will was invalid. It noted that paragraph "**SECOND**" contained the only dispositional provision in the will, and although the court described the language as "somewhat unartful," it concluded that the contested provision was a "clear, unambiguous devise and/or distribution of [Bohling's] entire estate." The court expressly rejected Robert's contention that a general residuary clause must be preceded by a specific bequest to be effective, reasoning that such a position was contrary to the rule of construction expressed in Neb. Rev. Stat. § 30-2342 (Reissue 2016), which states that "a general residuary clause in a will . . . is construed to pass all property which the testator owns at his death including property acquired after the execution of the will."

The court also found no genuine issue of fact regarding Bohling's testamentary capacity. It reasoned that Bohling's self-proved will established prima facie proof of testamentary capacity,[4] and Robert's affidavits did not rebut that presumption because they contained only "unsupported opinions" and "no facts" from which the court could reasonably infer that Bohling lacked testamentary capacity. The court further found that Morrissey's affidavit fully supported the conclusion that Bohling possessed testamentary capacity at the time he executed the will.

Finally, the court found no genuine issue of material fact regarding Robert's claim that Bohling's will was the product

---

[4] See *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994).

of Kimberly's undue influence. The court reasoned that to pre-vail on such a claim, Robert had to prove by a preponderance of the evidence that (1) the testator was subject to undue influence, (2) there was an opportunity to exercise such influence, (3) there was a disposition to exercise such influence, and (4) the result was clearly the effect of such influence.[5] It found that Robert had failed to adduce any evidence "as to how or when [the undue influence was] to have taken place" and that therefore, he had not established there was a factual issue to prevent summary judgment on the issue of undue influence.

After concluding the evidence was undisputed that Bohling left a valid will, the district court sustained Kimberly's motion for summary judgment, overruled Robert's competing motion, and certified its judgment to the county court.[6] Robert timely appealed, and we moved the case to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Robert assigns five errors, which we consolidate and restate into two. He claims the district court erred in granting summary judgment in favor of Kimberly because (1) the dispositional provision in Bohling's will was incomplete, and therefore invalid, and (2) there were genuine factual disputes regarding testamentary capacity and undue influence which should have precluded summary judgment, but the court failed to consider Robert's evidence or afford him the benefit of all reasonable inferences from that evidence.

## III. STANDARD OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts

---

[5] See *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015). See, also, § 30-2431 (contestant of will has burden to establish undue influence).

[6] See § 30-2429.01(5).

or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[7] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[8]

[3,4] Whether a provision in a will is too uncertain to be valid presents a question of law which an appellate court reviews de novo.[9] When reviewing questions of law, an appellate court reaches a conclusion independent of the determination reached by the court below.[10]

## IV. ANALYSIS

### 1. Will Contests Transferred to District Court

[5] Before analyzing Robert's assigned errors, we address the jurisdictional constraints that are present when a will contest is transferred from probate court to district court pursuant to § 30-2429.01. It is necessary to address jurisdiction because both parties' appellate briefing devotes considerable argument to how certain provisions in Bohling's will—namely the dispositional provision and the provision regarding disinheritance in paragraph "**SECOND**"—should be construed. But when a will contest is transferred to the district court pursuant to § 30-2429.01, the district court's authority over the proceedings is limited to "determin[ing] whether the decedent left a valid will."[11] And once the county court clerk transmits the

---

[7] *Sundermann v. Hy-Vee*, 306 Neb. 749, 947 N.W.2d 492 (2020).

[8] *Id.*

[9] See *In re Estate of Casselman*, 219 Neb. 516, 364 N.W.2d 27 (1985). See, also, *Foster v. Foster*, 196 W. Va. 341, 472 S.E.2d 678 (1996) (whether will is invalid due to uncertainty presents legal question).

[10] See *In re Estate of Brinkman*, 308 Neb. 117, 953 N.W.2d 1 (2021).

[11] § 30-2429.01(4). See, also, *In re Estate of Casselman, supra* note 9.

required certification and docket fee to the district court clerk, the district court has "jurisdiction over the proceeding *on the contest*."[12] Given the jurisdictional parameters of a will contest transferred from probate court to district court pursuant to § 30-2429.01, the narrow question before the district court in this case was whether Bohling left a valid will.[13] Similarly, our appellate review is confined to whether the district court erred in granting summary judgment in favor of Kimberly on the question of whether Bohling left a valid will.

[6] Consequently, although the parties have focused much of their argument on how to construe provisions in the will, we will consider such arguments only insofar as they bear on the will's validity. Similarly, to the extent some of the district court's comments can be read to express an opinion on the proper construction of the will's dispositional language or the disinheritance provision, we disapprove of such a reading. Any issues regarding construction of the will are properly left to the probate court, except where they bear on the will's validity.[14]

With this framework in mind, we address Robert's assignments of error.

## 2. Validity of Bohling's Will

[7] A will's validity can be attacked on grounds of "'lack of testamentary capacity, fraud, undue influence, improper execution, forgery, or a subsequent revocation of the will by a

---

[12] See § 30-2429.01(3) (emphasis supplied).

[13] See § 30-2429.01(3). See, also, *In re Estate of Sehi*, 17 Neb. App. 697, 772 N.W.2d 103 (2009) (holding district court's jurisdiction to hear will contest pursuant to § 30-2429.01 is limited to determining validity).

[14] See Neb. Rev. Stat. § 30-2211 (Reissue 2016) (providing county courts have jurisdiction over decedents' estates, including construction of wills). See, also, *Brinkman v. Brinkman*, 302 Neb. 315, 923 N.W.2d 380 (2019) (holding, in declaratory judgment action seeking construction of will, that when county courts and district courts have concurrent jurisdiction over construction of will, doctrine of jurisdictional priority applies and first court to acquire jurisdiction retains it).

later document.'"[15] Additionally, the validity of a provision in a will or codicil can be challenged on grounds it is too indefinite or uncertain to effectuate any testamentary purpose of a will under Nebraska law.[16] In this will contest, Robert originally challenged the validity of Bohling's 2015 will on three grounds: lack of testamentary capacity, undue influence, and uncertainty of the will's only dispositional provision.

When the validity of a will is contested, the proponent of the will has "the burden of establishing prima facie proof of due execution, death, testamentary capacity, and venue," whereas contestants have "the burden of establishing undue influence, fraud, duress, mistake[,] or revocation."[17]

Robert has never claimed that Kimberly failed to meet her burden of establishing death, venue, or due execution, and we discern no genuine issue of material fact regarding any of those issues. We therefore focus our analysis on whether the district court erred in granting summary judgment in favor of Kimberly on the contested issues of (1) whether the dispositional provision of the will fails for uncertainty, (2) whether Bohling lacked testamentary capacity, and (3) whether the will was the result of Kimberly's undue influence.

(a) Dispositional Provision Does
Not Fail for Uncertainty

We understand Robert's primary challenge to the validity of the will to center on the first sentence of paragraph "**SECOND**," which provides: "All of the balance residue and

---

[15] *Martin v. Ullsperger*, 284 Neb. 526, 530, 822 N.W.2d 382, 385 (2012), quoting Annot., 3 A.L.R. 5th 590 (1992). See, also, *In re Estate of Barger*, 303 Neb. 817, 931 N.W.2d 660 (2019).

[16] See, *In re Estate of Casselman, supra* note 9 (holding provisions in codicil failed for uncertainty, and thus entire codicil was invalid); *Kepley v. Caldwell*, 96 Neb. 748, 148 N.W. 966 (1914) (holding residuary clause in will was too indefinite and uncertain for enforcement and thus was invalid).

[17] § 30-2431.

remainder of my Estate, whether real or personal and regardless of where situated, I do hereby give devise and bequeath unto my daughter, Kimberly Bohling." Robert describes this provision as a residuary clause that devised only the "leftovers"[18] of Bohling's estate. To the extent Robert's arguments can be construed as challenging the validity of the will at all, he suggests the will is invalid because its only dispositional provision is "explicitly reliant on a prior transfer occurring,"[19] and the will contains no other defined bequests. His argument, essentially, is that this provision is too incomplete, indefinite, or uncertain to effectuate any testamentary disposition. The district court rejected Robert's suggestion, and so do we.

[8] As already noted, the validity of a provision in a will or codicil can be challenged on grounds it is too indefinite or uncertain to effectuate any testamentary purpose.[20] Generally, in testamentary dispositions of property, both the property and the person to whom it is given must be set forth with sufficient certainty that the court can give effect to the disposition.[21] And since paragraph "**SECOND**" is the only dispositional provision in Bohling's will, it follows that if the only dispositional provision fails, the will would be invalid because a testamentary disposition is a necessary component of a valid will.[22] But we agree with the district court that the dispositional provision in Bohling's will does not fail for uncertainty.

The district court characterized the dispositional provision in paragraph "**SECOND**" as a general residuary clause, and it

---

[18] Brief for appellant at 24.

[19] *Id.*

[20] See, *In re Estate of Casselman, supra* note 9; *Kepley, supra* note 16.

[21] See 1 Jeffrey A. Schoenblum, Page on the Law of Wills, § 5.11 (2003).

[22] See Neb. Rev. Stat. § 30-2209(53) (Reissue 2016). See, also, 1 Schoenblum, *supra* note 21, §§ 5.3 and 5.4 (noting even when instrument is executed with formalities prescribed for wills, if it makes no effective disposition of property whatsoever, it is nontestamentary instrument not admissible to probate).

noted the rule of construction established in § 30-2342, which states "a general residuary clause in a will or a will making general disposition of all of the property of the testator is construed to pass all property which the testator owns at his death including property acquired after the execution of the will." Robert takes issue with the district court's characterization. He argues the dispositional provision in Bohling's will should not be construed as a "'general residuary clause' capable of transferring [Bohling's] entire estate," but, rather, as "a balance and remainder clause, transferring only the leftovers."[23] Robert's brief cites to no legal authority supporting the distinction he proposes. But in this will contest, it is not necessary to decide whether the sole dispositional provision in Bohling's will is a general residuary clause, some other type of residuary clause, or even whether it is a residuary clause at all.[24] That is because, as already discussed, matters of will construction, including Robert's claim that paragraph "**SECOND**" should not be construed as a general residuary clause under § 30-2342, are properly left to the probate court.[25]

This will contest is confined to the relevant question of the will's validity, and Robert has directed us to no authority supporting a conclusion that the dispositional provision in Bohling's will is too incomplete, indefinite, or uncertain to be valid. We review our prior cases addressing invalidity based on uncertainty, and find them instructive.

In *Kepley v. Caldwell*,[26] we considered a challenge to the validity of a residuary clause that provided:

---

[23] Brief for appellant at 26.

[24] See, e.g., *In re Estate of Johnson*, 260 Neb. 91, 615 N.W.2d 98 (2000) (discussing split of authority on whether provision purporting to dispose of entire estate can ever constitute residuary devise).

[25] See, §§ 30-2211 and 30-2429.01; *In re Estate of Casselman, supra* note 9; *Brinkman, supra* note 14; *In re Estate of Sehi, supra* note 13.

[26] *Kepley, supra* note 16, 96 Neb. at 749, 148 N.W.2d at 966.

"All personal property, except money, not otherwise disposed of herein, is to be paid and distributed by my executor as follows: To such persons, respectively, as were my friends in my lifetime, and he may think suitable and appropriate, observing my wishes in regard thereto so far as he may know or have reason to believe what they were."

We held that the legatees and bequests in the residuary clause were too indefinite and uncertain for enforcement, and thus the clause was invalid.[27]

In *In re Estate of Casselman*,[28] we considered a challenge to the validity of a four-page codicil, which we described as follows:

The introductory statement in the codicil sets out that [the testator] declares "this to be a codicil to alter a will and testiment [sic] . . . which at this time it is my feeling is necessary to alter to fit the times and the changed situations." Paragraph "1st" then states: "I hereby revoke and hold for naught any or all bequests made to and on behalf of [the testator's son James] in my will or any other manner." In succeeding paragraphs the codicil expresses [the testator's] dissatisfaction with the property settlement in a divorce case between [the testator] and his former wife [and] provides that [the testator's daughter Cynthia] should have a place to live and should be helped through school "by a loan of about half what a kid going through on a shoe string would get"; . . . and that if [the testator's son James] were to quit high school, he "shall be provided a room, a TV[,] and $10.00 a month for funny books or records until he reaches legal age although if [his custody] goes to either one or the other of the executors

---

[27] See *id.*

[28] *In re Estate of Casselman, supra* note 9, 219 Neb. at 518-19, 364 N.W.2d at 29.

they shall recieve [sic] the same compensation for sup-
port as the other children and the TV, Records Books and
room is out." The codicil further provided that if James
were to stay in school and go through college, he was
to be helped through with "a nominal amount" and that
"[i]n event James over comes his laziness disinterest in
property and management, sloppy and slothful living, lay-
ing around, lazyness [sic] and is not so influenced by his
mother to follow in her footsteps and he has proven him-
self then he maybe come [sic] a joint administrator of this
trust . . . ." "This trust" refers to [the testator's] intention,
expressed later in the codicil, that "[a]ll of the Casselman
property shall be a sacared [sic] and God given trust be
used, beautified and held for our successors" and "for a
living and forwarding our education." Paragraph "5th"
provided: "In event no one is interested in this property
after the above is fulfilled then a conference shall be held
equally between the Seventh Day adventist church and
Harvard preferably Law School, or business School, or
Divinity School to dispose or use the property . . . ."

Observing that the purported codicil recited "conflicting meth-
ods and aims,"[29] we ultimately concluded the entire codicil
failed for uncertainty and was not entitled to probate.

In contrast to the failed residuary clause in *Kepley*, and the
failed codicil in *In re Estate of Casselman*, the single disposi-
tional provision in Bohling's will provides: "All of the balance
residue and remainder of my Estate, whether real or personal
and regardless of where situated, I do hereby give devise and
bequeath unto my daughter, Kimberly Bohling." This provision
purports to make a testamentary devise of ascertainable real
and personal property to an identifiable devisee.[30] It is not in
conflict with any other provision in the will, and neither the

---

[29] *Id.* at 520, 364 N.W.2d at 30.

[30] See 1 Schoenblum, *supra* note 21.

subject nor the object of the devise is so indefinite or uncertain as to be invalid.[31]

While the proper construction of the language in paragraph "**SECOND**" is a matter properly left to the probate court, we conclude as a matter of law that the provision does not fail for uncertainty; it is valid and entitled to probate.

### (b) No Factual Dispute Regarding Testamentary Capacity or Undue Influence

In his remaining assignment of error, Robert claims that when the court granted summary judgment in favor of Kimberly on the issues of testamentary capacity and undue influence, it "only considered the evidence presented by Kimberly."[32] Robert argues that the court ignored statements contained in his affidavit and in the affidavits of Bohling's friends, which he claims showed that Bohling "definitely would not have disinherited or left his son out of his estate."[33] Robert does not quote or discuss any of the statements he claims were ignored, but we understand his argument to pertain to the opinions we quoted earlier in the background section, expressing the belief that Bohling would not have deliberately disinherited Robert. We limit our analysis accordingly.

According to Robert, these opinions created a material issue of fact as to both testamentary capacity and undue influence, because they suggested "the only way a disinheritance . . . could have possibly happened, would have been purely by mistake, confusion, miscommunication, or undue influence."[34] Setting aside whether Robert has proposed a reasonable inference

---

[31] See, e.g., *Blacker v. Thatcher*, 145 F.2d 255 (9th Cir. 1944) (holding will with single dispositional provision referencing residuum of estate was sufficiently definite to pass entire estate to identified legatee).

[32] Brief for appellant at 27.

[33] *Id.*

[34] *Id.*

from the opinions contained in the affidavits, we soundly reject Robert's claim that the district court improperly ignored this evidence. Instead, we conclude the court aptly characterized the statements to which Robert refers as "unsupported opinions" which did not create a genuine issue of fact for purposes of summary judgment.

[9,10] Affidavits used to support and oppose a motion for summary judgment must be made on personal knowledge, must set forth such facts as would be admissible in evidence, and "shall show affirmatively that the affiant is competent to testify to the matters stated therein."[35] Moreover, conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.[36]

In this case, Robert and Bohling's friends used slightly different language in their affidavits to express the same general opinion or belief: that because Bohling had a good relationship with Robert, he would not have intentionally disinherited him. Kimberly objected to these opinions as being factually unsupported, conclusory, and speculative. The court noted the objections and received the affidavits with the caveat that it would "ignore any . . . unsupported conclusions." Robert should not have been surprised, then, when the court expressly found that the "unsupported opinions" in Robert's affidavits did not create a genuine issue of material fact for purposes of summary judgment.

Robert does not assign error to the district court's evidentiary rulings, nor does he argue that the court's characterization of the statements as "unsupported opinions" was erroneous. Instead, he summarily argues that the district court erred when it "failed to consider"[37] the opinions expressed in his affidavits. This argument has no merit.

---

[35] Neb. Rev. Stat. § 25-1334 (Reissue 2016).

[36] *Shipley v. Department of Roads*, 283 Neb. 832, 813 N.W.2d 455 (2012).

[37] Brief for appellant at 28.

## V. CONCLUSION

Because there is no merit to any of Robert's assignments of error, we affirm the judgment of the district court insofar as it determined that Bohling's 2015 will is valid and entitled to probate.

Affirmed.