IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE ESTATE OF CARRIER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE ESTATE OF JAMES P. CARRIER, DECEASED.

JILL M. MILLER, APPELLANT,

V.

CHRISTY A. CARRIER, NOW KNOWN AS CHRISTY A. PELTZ, APPELLEE.

Filed December 23, 2025.    No. A-25-061.

Appeal from the District Court for Douglas County: LEANNE M. SRB, Judge. Affirmed.

Lisa M. Line, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellant.

Haley L. Cannon and Brent M. Kuhn, of Brent Kuhn Law, for appellee.

PIRTLE, WELCH, and FREEMAN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Jill M. Miller appeals from the order of the district court for Douglas County finding that her brother, James P. Carrier, had not validly executed a last will and testament. Based on the reasons that follow, we affirm.

## BACKGROUND

Carrier died on August 22, 2023, from a self-inflicted gunshot wound. At the time of his death, Carrier was married to Christy A. Carrier, now known as Christy A. Peltz. However, a dissolution action between Carrier and Peltz was pending, but no decree had been entered. Carrier had been living with his girlfriend, Joanna Swanson. Carrier had no children at the time of his death. His only sibling was Miller, who had two children.

- 1 -

On August 28, 2023, Peltz filed an application for informal probate of intestacy and informal appointment of personal representative in the Douglas County Court. Peltz indicated that she was not aware of any will or estate documents that had been executed during her marriage to Carrier.

On August 31, 2023, Miller filed a petition for formal probate of will, determination of heirs, and appointment of personal representative. The petition alleged that Carrier validly executed a will on February 15, 2023, that Miller was not aware of any instrument revoking the will, and that she believed that such will constituted his last will. The original purported will was filed with the probate court on October 24. Miller was the sole beneficiary.

On September 20, 2023, Peltz filed an objection to Miller's petition, alleging that the purported will was not executed with the formalities required by Nebraska statutes for the execution of a valid will.

On October 24, 2023, Peltz filed a notice of transfer to district court pursuant to Neb. Rev. Stat. § 30-2429.01 (Reissue 2016). The county court entered an order to transfer the matter to the district court for Douglas County.

On October 16, 2024, the district court held a hearing on the will contest. At the hearing, one of the exhibits entered into evidence was an envelope labeled "Paul Original Will" that contained four pages of paper.

The first page is titled "Last Will and Testament of James Paul Carrier." At the top of the page it says "Last Will and Testament of James Paul Carrier – Page 1 February, 2023." This one-page document makes testamentary disposition of Carrier's property and designates Miller as the beneficiary. There are two signatures on this document, Carrier's and Jane Vlcek's. Vlcek worked with Carrier for about two years before his death. Vlcek signed as a witness to the document and as a notary. No other witnesses signed the document. The document indicates Carrier and Vlcek signed and dated the document on February 15, 2023.

The second of the four pages is titled "State of Nebraska Power of Attorney for Health Care," and at the top of the page it says "Page 1 of 2 - James Paul Carrier Power of Attorney for Healthcare – February, 2023." At the top of the third page it says "Page 2 of 2 – James Paul Carrier Power of Attorney for Healthcare – February 2023." These two pages grant the right to certain individuals to act on Carrier's behalf during his lifetime. Specifically, the document indicates that the attorneys in fact appointed by the document can make health care decisions for Carrier when he is determined to be incapable of making his own decisions. The first of these two pages is purportedly signed by Carrier and dated August 22, 2023. The second of these two pages is signed by Swanson as a witness and notarized by Vlcek. The document indicates Vlcek notarized the document on February 15, 2023.

The fourth page is titled "State of Nebraska Durable Power of Attorney." The document grants the right to certain individuals to act on Carrier's behalf during his lifetime. Specifically, this document states Miller may act in matters on Carrier's behalf "even when [he] could be in a comatose condition or judged incompetent by law." There are three signatures on this document: Carrier, Swanson, and Vlcek. Swanson signed the document as a witness and Vlcek signed the document as a notary. The document indicates all three individuals signed the document on February 15, 2023.

At the hearing, the court heard testimony from Vlcek, Miller, and Peltz. Vlcek testified that on February 15, 2023, she witnessed Carrier sign the "Last Will and Testament" document and then she signed it. Vlcek also testified that on the same day, Carrier signed the other two documents in the presence of herself and Swanson; Swanson signed the documents as a witness, and Vlcek signed and notarized the signatures of Carrier and Swanson.

Swanson testified that she began an intimate relationship with Carrier in January or February 2023, and Carrier started living with her in April or May of that year. Swanson testified that she and Carrier grew up together and she was best friends with Miller in junior high school. Swanson indicated that the four pages were all signed at the same meeting on February 15, 2023. She testified that prior to February 15, Carrier told her "he was updating his will and . . . that he had these documents created, he had read through them and needed them notarized." Swanson later testified that Carrier told her "he was going through a divorce and wanted to update his will and power of attorney and health care power of attorney."

Miller was Carrier's only sibling, and she had two children who had a close relationship with Carrier. She testified she and Swanson knew each other when they were young and were good friends through junior high and into high school. Miller indicated that she and Swanson reconnected after Carrier and Swanson's relationship started. She testified she was not aware that Carrier had any documents prepared regarding his estate prior to his death. Miller explained that the purported will was discovered after Carrier's death and was in a gun safe in Carrier's storage unit.

Peltz testified that she and Carrier were married in 2001 and were still married at the time of his death. Divorce proceedings were pending, however. She was not aware that Carrier executed any estate planning documents.

Following the hearing, the district court entered an order finding that the "Power of Attorney for Health Care" document and the "Durable Power of Attorney" could not be construed as part of the purported will and, therefore, Miller had failed to meet her burden of establishing prima facie proof of due execution of the purported will.

ASSIGNMENTS OF ERROR

Miller assigns the district court erred in (1) determining Carrier did not leave a validly executed will; (2) determining the four pages signed by Carrier on February 15, 2023, were not executed in compliance with Neb. Rev. Stat. § 30-2327 (Reissue 2016); (3) failing to consider the four pages executed by Carrier on February 15, 2023, together when determining execution; and (4) failing to determine that even if the pages were considered independently, because they were signed on the same day, at the same time, in the same meeting, continuously maintained together, with the references to post-death administration of Carrier's person and property, the execution requirement was satisfied as part of the same transaction.

STANDARD OF REVIEW

Appeals of matters arising under the Nebraska Probate Code are reviewed for error on the record. When reviewing a judgment for errors on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023). An appellate court,

in reviewing a probate court judgment for errors appearing on the record, will not substitute its factual findings for those of the probate court where competent evidence supports those findings. *Id.*

ANALYSIS

All four of Miller's assignments of error can be summarized as one: the district court erred in determining Carrier did not leave a validly executed will under Nebraska law.

When the validity of a will is contested, the proponent of the will has "'the burden of establishing prima facie proof of due execution, death, testamentary capacity, and venue,'" whereas contestants have "'the burden of establishing undue influence, fraud, duress, mistake[,] or revocation.'" *Bohling v. Bohling*, 309 Neb. 625, 636, 962 N.W.2d 224, 232 (2021) (quoting Neb. Rev. Stat. § 30-2431 (Reissue 2016)). In a will contest, parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof. *In re Estate of Walker, supra*.

For a will to be valid and admitted into probate, § 30-2327 requires, in pertinent part:

[E]very will is required to be in writing signed by the testator or in the testator's name by some other individual in the testator's presence and by his direction, and *is required to be signed by at least two individuals* each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.

(Emphasis added.)

Under § 30-2327, a will must be signed by two witnesses, each of whom witnessed either the signing or the testator's acknowledgment of the signing or of the will. Statutory provisions regarding the manner in which wills must be executed are mandatory and subject to strict construction. *In re Estate of Loftus*, 26 Neb. App. 439, 920 N.W.2d 718 (2018). The attestation required of witnesses to a will consists of their seeing that those things exist and are done which the law requires to exist or to be done in order to make the instrument, in law, the will of the testator. *Id.* Due execution of a will means compliance with the formalities required by the statute in order to make the instrument the will of the testator. *Id.*

In the present case, the purported will was found in an envelope labeled "Paul Original Will" and contained four pages. The first page was titled "Last Will & Testament of James Paul Carrier." This page was signed by Carrier and by Vlcek, as a witness and as a notary. No other witness signed the document. Therefore, the "Last Will & Testament of James Paul Carrier" page does not meet the requirements set out in § 30-2327 because it is not signed by two witnesses. The statutory provisions controlling the manner in which wills must be executed are generally held to be mandatory and subject to strict construction, and if not substantially complied with, the will is inoperative. *In re Kaiser's Estate*, 150 Neb. 295, 34 N.W.2d 366 (1948). Accordingly, the single page purporting to be Carrier's will does not constitute a valid will pursuant to Nebraska law.

Miller, however, argues that the four pages found together in the envelope labeled "Paul Original Will" are one document, and, when considered together, the requirements of § 30-2327 are met. As just stated, the first page is titled "Last Will & Testament of James Paul Carrier." The second page is titled "State of Nebraska Power of Attorney for Health Care," and is "Page 1 of 2," and the third page indicates it is part of the Power of Attorney for Health Care by noting "Page 2

of 2" at the top. The fourth page is titled "State of Nebraska Durable Power of Attorney." Swanson's signature appears on pages three and four. Miller contends that all four pages construed together constitute Carrier's will and Swanson was the second witness to Carrier's will, satisfying the statutory requirement.

Miller also argues the four pages comprise one document, Carrier's will, because the pages were executed by Carrier and his witnesses at the same time and at the same location. She contends Carrier brought the four pages to his employer's office on February 15, 2023, and asked Miller and Swanson to assist him in executing his will. She states that she, Swanson, and Carrier all signed the document in the presence of each other.

Miller also relies on the fact that the pages were physically connected in that they were folded together as one unit and enclosed in an envelope marked "Paul Original Will." Miller contends this should be sufficient to connect the pages together for the purpose of determining due execution.

We disagree that the four pages are one document and that they are Carrier's validly executed will. As the district court noted, a will need not be written entirely on one sheet of paper, but may be written on several sheets, provided the sheets are so connected together that they may be identified as parts of the same will. See *In re Kaiser's Estate, supra*. In the present case, the four pages are not so "connected together" that it can be found they are all parts of Carrier's will. The four pages make no reference to each other, with the exception of pages 2 and 3 both indicating they are Carrier's "Power of Attorney for Healthcare." Neither the "Power of Attorney for Health Care" nor the "Durable Power of Attorney" make any reference to the "Last Will & Testament of James Paul Carrier." Further, the fact that the four pages were in the same envelope does not make them one document.

In addition, the "Power of Attorney for Health Care" and the "Durable Power of Attorney" do not make a testamentary disposition of Carrier's property, nor do they designate any beneficiaries. Rather, the "Power of Attorney for Health Care" and the "Durable Power of Attorney" serve their own specific purposes. The "Power of Attorney for Health Care" indicates that the attorneys in fact appointed by the document can make health care decisions for Carrier when he is determined to be incapable of making his own decisions. The "Durable Power of Attorney" states that Miller may act in matters on Carrier's behalf "even when [he] could be in a comatose condition or judged incompetent by law." Further, both documents grant rights to certain individuals to act on Carrier's behalf during his lifetime. The provisions of a will take effect and become operative at the time of the death of the testator. *In re Estate of Odenreider*, 286 Neb. 480, 837 N.W.2d 756 (2013).

Therefore, even if the "Power of Attorney for Health Care" and the "Durable Power of Attorney" were signed and witnessed at the same time as the "Last Will & Testament of James Paul Carrier," they cannot be construed as part of Carrier's purported will. The four pages comprise three separate documents that serve three separate purposes.

We also note that Swanson testified Carrier told her he was updating his will and "had these documents created, he had read through them and needed them notarized." Swanson later testified that Carrier told her "he was going through a divorce and wanted to update his will and power of attorney and health care power of attorney." Based on Swanson's testimony, Carrier knew he was signing three separate documents.

We agree with the district court that the "Power of Attorney for Health Care" and the "Durable Power of Attorney" cannot be construed as part of Carrier's purported will. As discussed earlier, the one-page purported will was not signed by two witnesses as required by § 30-2327. Accordingly, Miller has failed to meet her burden of establishing prima facie proof of due execution of the purported will.

CONCLUSION

We conclude the district court did not err in finding Carrier did not execute a valid will. The district court's order is affirmed.

AFFIRMED.