JAY ARTHUR DIVIS, APPELLANT, V. CLARKLIFT OF NEBRASKA, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.

590 N.W. 2d 696

Filed March 12, 1999.    No. S-97-905.

James R. Welsh, of Bradford, Coenen & Welsh, for appellant.

Robert D. Mullin, Jr., and Aaron A. Clark, of McGrath, North, Mullin & Kratz, P.C., for appellee Clarklift.

Michael C. Cox, of Koley, Jessen, Daubman & Rupiper, P.C., for appellee Clark.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.
## I. INTRODUCTION
This is a product liability action brought by appellant, Jay Arthur Divis, against appellees, Clarklift of Nebraska, Inc. (Clarklift), Clark Material Handling Company (Clark), Wahoo Concrete Products, Co. (Wahoo Concrete), and Right Line Equipment, Inc., for the injuries he sustained in a forklift accident.

The forklift in question can best be described as follows: The forklift contains two vertically parallel members (masts) that raise up and down inside the framework of the forklift. Two other horizontally parallel members (carriages) are welded to the masts. The forks, which are L-shaped, are bolted to the top carriage.

The evidence indicates weld failure occurred at the point where the top carriage is welded to the masts.

## II. BACKGROUND

In 1979, Clark designed and manufactured the forklift in question. On January 19, Clark shipped the forklift to Christy Equipment Company, Clarklift's predecessor. In July, Clarklift sold the forklift to Georgia-Pacific Corporation (Georgia-Pacific). Approximately 12 years later, in 1992, Wahoo Concrete sought to purchase a used forklift from Clarklift. In July, Clarklift repurchased the forklift from Georgia-Pacific for resale to Wahoo Concrete.

Prior to delivering the forklift to Wahoo Concrete, Clarklift installed an attachment known as a side-shifter at the request of Wahoo Concrete. A side-shifter is an accessory that bolts onto the carriage of the forklift and allows the forks to move vertically and horizontally. In this respect, Clark's procedures require that any installation of attachments to Clark forklifts be authorized and approved by Clark. Clarklift therefore requested authorization to install the side-shifter, which Clark provided.

Clarklift also refurbished the forklift. Clarklift contributed 30½ hours to refurbishing the forklift and spent $4,700 in parts and $1,825 in labor. The refurbishing consisted of such repairs

as removing the cab, sanding and painting, rebuilding the steering axle, installing the side-shifter, installing a new gas engine, adjusting the lift chains, replacing the upright bushings, replacing the side doors, repairing the shift linkage, installing new tires, repairing the sheet metal, and installing a new seat, as well as various other repairs which are indiscernible from the record.

At the time of sale, Clarklift issued a "Standard Industrial" warranty to Wahoo Concrete. Under the warranty, Clarklift warranted the drive train only. The drive train is defined in the warranty as the engine, transmission, and drive axle, excluding brakes. The warranty also excluded leaks, adjustments, and minor deficiencies.

Upon receipt of the forklift, Wahoo Concrete intended to use the forklift in the course of its business, manufacturing floorings for hog confinement facilities. The floorings are 10- by 10-foot concrete slabs weighing 1,800 pounds. The concrete slabs are manufactured by pouring concrete into metal forms. Once the concrete has set, the concrete must then be removed from the form. Wahoo Concrete accomplished this by operating the forklift with a steel extension (jib-boom) and chains.

The jib-boom in question is approximately 8 inches wide by $5\frac{1}{4}$ inches high by $\frac{1}{4}$ inch thick, and 9 feet long. The jib-boom contains two $\frac{3}{4}$-inch-diameter hooks welded to the bottom side of the attachment. One hook is positioned on the end of the jib-boom, and the other hook is positioned approximately 24 inches from the end. To use the jib-boom, the forks are moved to a position directly adjacent to one another. The jib-boom is attached to the forks, which are then positioned over the concrete slab and the form. A metal chain, which is attached to one of the hooks on the jib-boom, is then attached to the concrete slab, whereupon the forks are raised to lift the concrete slab out of the form.

On June 1, 1994, Divis was employed at Wahoo Concrete as a concrete finisher. One of Divis' responsibilities was to assist in manufacturing the concrete slabs, which included removing the slabs from the forms once the concrete was set. On the day of the accident, several Wahoo Concrete employees, including Divis, were in the process of removing a slab from a form when the slab became somewhat unbalanced. Attempting to act as a

counterbalance, Divis sat on the concrete slab while the slab was being raised out of the form. Divis' position, when sitting on the concrete slab, placed him under the masts and carriages of the forklift. While the slab was being raised out of the form, the welds on the top carriage and the masts failed. The carriage unit snapped, falling down on top of Divis, striking him on the head, pinching him between the slab and the jib-boom, and ultimately causing severe injuries.

On August 24, 1995, Divis filed a second amended petition against appellees based on negligence, strict liability, and breach of warranty. On January 16, 1997, Clark and Clarklift filed motions for summary judgment, alleging that Divis' claims were barred by the product liability statute of repose, Neb. Rev. Stat. § 25-224(2) (Reissue 1995). On March 6, 1997, a summary judgment hearing was held where evidence was adduced which included, inter alia, the opinions of several experts regarding the cause of the accident. The experts agreed that the accident was caused by a weld failure that occurred between the top carriage and the masts, that the weld failure was caused by a lack of fusion between the carriage and the masts, and that the lack of fusion occurred at the time of manufacture in 1979. Based on this evidence, the district court ruled in favor of Clark and Clarklift, finding, "The evidence presented is uncontroverted that this failure resulted from the original manufacture and not from acts of 'Clarklift.' "

### III. ASSIGNMENTS OF ERROR

Rephrased and reordered, Divis claims that the district court erroneously granted summary judgment because (1) the statute of repose began anew when Clarklift reconditioned and refurbished the forklift, which Clark approved and authorized; (2) the statute of repose does not apply to the allegations of negligence Divis asserted against Clarklift; and (3) a factual issue exists regarding whether the "Standard Industrial" warranty issued by Clarklift falls with the exception in § 25-224(2).

### IV. STANDARD OF REVIEW

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party

the benefit of all reasonable inferences deducible from the evidence. *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998).

## V. ANALYSIS

### 1. RECONDITIONED OR REFURBISHED

Divis first claims that Clark and Clarklift should be held liable because the statute of repose began anew when Clarklift reconditioned and refurbished the forklift, which Clark approved and authorized. Divis essentially claims that a piece of machinery which has been refurbished becomes a "new product" for purposes of a product liability action, recommencing the statute of repose from the date of the new product's sale.

Courts have employed a two-part test to determine whether the statute of repose should recommence when a product has been refurbished. First, courts must determine whether the refurbishing resulted in a "new product." To determine whether the product should be considered "new," courts must inquire whether the refurbishing has lengthened the product's useful life beyond what was contemplated when the product was first sold. Second, if the product is considered "new," the suit will still be time barred unless the refurbishing was defective and proximately caused the injury. See, e.g., *Whitaker v. T.J. Snow Co., Inc.*, 953 F. Supp. 1034 (N.D. Ind. 1997); *Johnson v. Kempler Industries, Inc.*, 677 N.E.2d 531 (Ind. App. 1997); *Fritchie v. Alumax Inc.*, 931 F. Supp. 662 (D. Neb. 1996); *Richardson v. Gallo Equipment Co.*, 990 F.2d 330 (7th Cir. 1993); *Hinds v. CompAir Kellogg*, 776 F. Supp. 1102 (E.D. Va. 1991); *Reese v. National Mine Service Co.*, 672 F. Supp. 1116 (S.D. Ill. 1987).

### (a) Clark

The record shows that Clark manufactured the forklift in 1979. Twelve years later, Clarklift refurbished the forklift and attached the side-shifter. While Clark did not authorize the refurbishing, the record shows that Clark authorized Clarklift to add the side-shifter. However, nothing in the record indicates

that Clark's authorization included permission to refurbish the forklift or that Clark manufactured the side-shifter or supplied the side-shifter to Clarklift. The record also lacks any evidence indicating or suggesting that the addition of the side-shifter, standing alone, extended the forklift's useful life.

The record undisputably demonstrates the accident was caused by a latent weld defect between the carriage and the masts dating back to the original manufacture of the forklift in 1979, not by the addition of the side-shifter. The affidavit of James Hummel, an employee of Clarklift, which was received into evidence without objection, provides that "the failed weld linking the crossbar to the mast of the forklift was a factory weld dating back to the original manufacture of the forklift." Divis' own expert stated that the weld defect occurred when the forklift was originally manufactured:

Q. . . . Do you know what the problem was, if any problem in the welding, that caused the lack of fusion that you're talking about?

A. I can only tell you that the normal reason for not fusing to a member is that the electrode is in the wrong position and the weld metal rolls up cold against the part and you do not melt the one side of the weld.

Q. Do you know if that happened in this case?

A. If that happened? I don't know of any other way of getting lack of fusion.

Q. Okay. So is it your opinion that that's what happened in this case?

A. That's what happened.

Q. Okay. And do you know when that weld was performed or when that weld was done on this particular piece of equipment?

A. No.

Q. Do you know if it was done at the time of the original manufacture?

A. All I can say is that it did not — it does not appear to be a repaired weld.

Q. Okay. So more than likely, the problem with the welding occurred at the time of original manufacture?

A. Yes.

Divis' expert further testified that in his opinion, the addition of the side-shifter was not a cause of the weld failure: "Q. Okay. Do you have any opinions with regard to the — or strike that. Has your opinion with regard to the weld failures, does it have anything to do with a side shifter? A. Not that I'm aware of."

Therefore, because none of Clark's actions extended the useful life of the forklift or proximately caused the injury, the statute of repose cannot be recommenced and Divis' claim against Clark is time barred by the statute of repose. As stated in *Richardson v. Gallo Equipment Co.*, 990 F.2d 330, 332 (7th Cir. 1993): "Unless the component is defective and caused the injury, the suit is barred by the statute of repose because then the defect must have been in the original product . . . ."

### (b) Clarklift

Clarklift purchased the forklift from Clark in 1979 and sold it shortly thereafter to Georgia-Pacific. As the seller in 1979, Clarklift assumed the status of a manufacturer, pursuant to the product liability statutes. See Neb. Rev. Stat. § 25-21,180 (Reissue 1995) (defining a product liability action as "any action brought against a manufacturer, seller, or lessor of a product . . . ."). In 1992, Clarklift repurchased the forklift from Georgia-Pacific and significantly refurbished the forklift in preparation for resale to Wahoo Concrete.

Affording Divis every reasonable inference deducible from the evidence, we will assume that the refurbishing, together with the addition of the side-shifter, extended the useful life of the forklift with regard to Clarklift. See *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998). Nonetheless, Divis must still demonstrate the refurbishing was a proximate cause or a proximately contributing cause of the accident. See *Richardson v. Gallo Equipment Co., supra.* The evidence universally demonstrates the accident was not caused by the refurbishing, but, rather, by the latent weld defect in the masts of the forklift dating back to the original manufacture in 1979. Divis' attorney conceded during oral argument that the record is devoid of any evidence that the 1992 modifications caused the original weld to fail.

Given the absence of any evidence even remotely suggesting that the refurbishing was a proximate cause or a proximately

contributing cause of the weld failure, we conclude that Divis' claim against Clarklift was time barred by the 10-year statute of repose. See *id.*

## 2. NEGLIGENCE THEORY

Divis next claims the statute of repose does not apply to his negligence action against Clarklift because the claim arises from Clarklift's alleged negligence in refurbishing and repairing the forklift before it was sold to Wahoo Concrete in 1992. Assuming without deciding that Divis' position is correct, we determine that the negligence claim still fails.

In order to maintain a negligence action, a plaintiff must prove duty, breach, proximate cause, and damages. *Grote v. Meyers Land & Cattle Co.*, 240 Neb. 959, 485 N.W.2d 748 (1992). As previously discussed, there is simply no evidence in the record, nor any reasonable inferences to be drawn therefrom, that any action by Clarklift in refurbishing the forklift or installing the side-shifter was a proximate cause or a proximately contributing cause of Divis' injury. The lack of fusion in the weld on the masts of the forklift occurred during the manufacturing process. Divis has produced no evidence indicating that Clarklift had any prior knowledge of the defective weld or that the lack of fusion in the weld was known by Clarklift or could have been reasonably discovered during the course of refurbishing the equipment. The record simply lacks any evidence that Clarklift's alleged negligence played any role in the ultimate failure of the weld. Having failed to produce evidence of proximate causation, summary judgment was properly granted on this claim.

## 3. BREACH OF WARRANTY

Finally, Divis claims the district court erred in granting summary judgment because a factual issue exists regarding whether the "Standard Industrial" warranty issued by Clarklift falls within the exception in § 25-224(2) and thereby avoids the 10-year statute of repose. Divis essentially argues the "Standard Industrial" warranty created either an express or an implied warranty which should have survived summary judgment. See Neb. U.C.C. §§ 2-313, 2-314, and 2-315 (Reissue 1992).

Here again, assuming without deciding that Divis' claim falls within the exception in § 25-224(2), the claim still fails.

To maintain a warranty action, several factors must be proved: (1) The plaintiff must prove the defendant made a warranty, express or implied, under §§ 2-313, 2-314, or 2-315; (2) the plaintiff must prove the goods did not comply with the warranty, i.e., the goods were defective at the time of the sale; (3) the plaintiff must prove the injury was caused, proximately and in fact, by the defective nature of the goods; and (4) the plaintiff must prove damages. See *England v. Leithoff*, 212 Neb. 462, 323 N.W.2d 98 (1982). See, e.g., *Murphy v. Spelts-Shultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992); *Delgado v. Inryco, Inc.*, 230 Neb. 662, 433 N.W.2d 179 (1988); *Geiger v. Sweeney*, 201 Neb. 175, 266 N.W.2d 895 (1978).

Clarklift issued a uniform used equipment warranty to Wahoo Concrete upon delivery of the forklift. The warranty classification was identified as "Standard Industrial." A "Standard Industrial" warranty, as defined in the document, included "the drive train (engine, transmission, drive axle, excluding brakes) for 30 days or 60 hours full parts and labor." Under the warranty explanation, the warranty again indicates that "the unit is covered by a 30-day drive train warranty . . . ."

The record shows that Divis sustained his injury almost 2 years after the forklift was delivered to Wahoo Concrete. This is clearly beyond the 30-day limitation period set forth in the warranty. In addition, the record lacks even a scintilla of evidence suggesting that the drive train components, as identified in the warranty, or any of the work performed on the forklift by Clarklift played any role, proximately or in fact, in the weld failure. See *England v. Leithoff, supra*. We therefore conclude that Divis' breach of warranty claim lacks merit and that the district court correctly granted summary judgment.

## VI. CONCLUSION

Having addressed each of Divis' assignments of error, and finding none of them meritorious, we affirm the district court's grant of summary judgment.

AFFIRMED.