Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/26/2022 12:07 PM CDT

AG VALLEY COOPERATIVE, NON-STOCK, A NEBRASKA
COOPERATIVE CORPORATION, APPELLANT, V.
SERVINSKY ENGINEERING, PLLC, A MICHIGAN
PROFESSIONAL LIMITED LIABILITY
COMPANY, ET AL., APPELLEES.

___ N.W.2d ___

Filed June 3, 2022.    No. S-20-709.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.

3. **Limitations of Actions.** The determination of which statute of repose applies is a question of law.

4. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

5. **Summary Judgment.** Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.

6. **Limitations of Actions: Contractors and Subcontractors.** Claims of defective construction brought against builders and contractors are governed by the limitations periods set out in Neb. Rev. Stat. § 25-223 (Reissue 2016), whether the claims are based on theories of contract, tort, fraud, or breach of warranty.

7. **Statutes.** The interpretation of a statute presents a question of law.

8. **Statutes: Legislature: Intent.** When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

9. **Statutes: Courts.** A court must reconcile different provisions of the statute so they are consistent, harmonious, and sensible.

10. **Statutes: Intent.** In construing a statute, the court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

11. **Products Liability: Limitations of Actions.** Nebraska's product liability statute of repose in Neb. Rev. Stat. § 25-224(2)(a) (Reissue 2016) contemplates a single state of manufacture for each product and a single statute of repose for each product.

12. ____: ____. For purposes of the product liability statute of repose in Neb. Rev. Stat. § 25-224(2)(a) (Reissue 2016), it is immaterial where the product's various component parts were manufactured; a claim brought against the manufacturer of a component part will be governed by the same repose period as applies to the manufacturer of the completed product.

13. **Products Liability: Limitations of Actions: Words and Phrases.** Reference to "the product" in Neb. Rev. Stat. § 25-224(2)(a)(i) and (ii) (Reissue 2016) means the product that was placed on the market and sold to the consumer for use or consumption, and it necessarily includes the product's original component parts.

14. **Products Liability: Limitations of Actions.** Ordinarily, deciding whether a product liability action is barred by the statute of repose in Neb. Rev. Stat. § 25-224(2)(a) (Reissue 2016) will not require the court to consider the merits of the particular claim at all, because the statute of repose operates as a statutory bar independent of the merits of the action.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

John P. Weis and Andrew D. Wurdeman, of Wolfe, Snowden, Hurd, Ahl, Sitzmann, Tannehill & Hahn, L.L.P., for appellant.

Terry J. Grennan and Michael R. Faz, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee Servinsky Engineering, PLLC.

Daniel L. Lindstrom and Elizabeth J. Klingelhoefer, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellee Johnson System, Inc.

Brenna Marie Grasz, Gary Nedved, and Christopher Gruber, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for appellee Heartland Building Systems, Inc.

Andre R. Barry, Jennie A. Kuehner, and Kevin J. Schneider, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Chief Industries, Inc.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Freudenberg, JJ., and Weimer, District Judge.

Stacy, J.
This case arises from the 2017 collapse of a premanufactured grain bin that was constructed and put into service in 2007. In 2018, the owner of the grain bin filed suit against multiple defendants, alleging the collapse was due to defects in designing, manufacturing, and constructing the grain bin. In a series of orders, the district court granted summary judgment in favor of the defendants. It dismissed the claim against the general contractor as barred by the statute of repose in Neb. Rev. Stat. § 25-223 (Reissue 2016). It dismissed the product liability claim against the manufacturers as barred by the statute of repose in Neb. Rev. Stat. § 25-224(2)(a)(i) (Reissue 2016). And it dismissed the product liability claim against

an engineering firm after finding the firm was not involved in the design or manufacturing of the subject grain bin.

The owner of the grain bin appeals, arguing primarily that the district court did not apply the correct statutes of repose to the various claims. Finding no merit to the assignments of error, we affirm.

## I. BACKGROUND

### 1. Parties

Ag Valley Cooperative, Non-Stock (Ag Valley), is a cooperative corporation organized and existing under Nebraska law. It is an agricultural producer-owned cooperative engaged in the buying, selling, and storing of grain, farm products, and farming inputs.

Chief Industries, Inc. (Chief), is a Delaware corporation with its principal place of business in Nebraska. One of its divisions, headquartered in Kearney, Nebraska, is engaged in the business of designing, manufacturing, and constructing metal buildings, including grain bin storage facilities and components thereof.

Heartland Building Systems, Inc. (Heartland), is a Nebraska corporation engaged in the business of constructing, designing, and installing grain bin systems and components for grain bin storage. Heartland is a dealer for Chief.

At all relevant times, Johnson System, Inc. (Johnson), was a Michigan corporation engaged in the business of designing, manufacturing, and selling grain bin structures and component parts. And Servinsky Engineering, PLLC (Servinsky), was a company that provided structural engineering consulting services to Johnson.

### 2. Grain Bin

In late January 2007, Ag Valley contracted with Heartland to serve as the general contractor for the construction of a

grain storage facility in Edison, Nebraska. The Edison facility included several grain bins, one of which was a "Chief Titan 'Agri-Dome'" model CB50-15, which Heartland ordered directly from Chief. For ease of reference, we will refer to the subject grain bin as the "Titan model CB50."

Chief designed and manufactured the primary components of the Titan model CB50 at its facility in Kearney, including the curved sidewall panels, the roof structure, and the metal stiffeners that ran vertically along the sidewalls to add strength. The Titan model CB50 sold to Ag Valley was customized to include specific features for the Edison facility, including a feature the parties refer to as a "skid loader door." This door was approximately 7 feet wide and 8 feet tall, and it allowed a skid loader to enter the base of the bin to assist in emptying residual grain. To accommodate the skid loader door, Chief designed and manufactured the Titan model CB50 using shorter sidewall sheets, and it designed and fabricated two base plates to add horizontal strength to the sill of the skid loader door.

At Chief's request, the skid loader door itself was designed and manufactured by Johnson, specifically for incorporation into the Titan model CB50 being manufactured for the Edison facility. Johnson manufactured the door at its facility in Michigan in May and June 2007, and then shipped the component part directly to Chief in Kearney. Chief then shipped the entire Titan model CB50, with all of its component parts and instructions for assembly and installation, to Heartland's construction site in Edison.

Heartland's subcontractors completed installation and construction of the Titan model CB50 on July 4, 2007. During construction, the bin was anchored to a concrete foundation, and when completed, the bin was 155 feet in diameter and could store over 1 million bushels of grain. The following exhibit depicts the Edison facility with the Titan model CB50 and the skid loader door in the foreground:



Construction on Ag Valley's Edison facility was completed on November 1, 2007, and the Titan model CB50 was placed into service. Final payment on the construction project was made by Ag Valley to Heartland on November 30. The Titan model CB50 was full of grain when it collapsed without warning almost 10 years later, on August 6, 2017.

### 3. Operative Complaint

On March 20, 2018, Ag Valley filed this lawsuit in the district court for Lancaster County, seeking damages in excess of $8 million from multiple defendants allegedly involved in designing, manufacturing, and constructing the grain storage facility. We summarize the allegations of the operative second amended complaint only as relevant to the issues and the parties before us on appeal.

Ag Valley styled its only claim against Heartland as one based in contract. The operative complaint alleged that Heartland, as the general contractor, "breached its agreement

to properly design and construct the grain bin facility in a workman like manner" and "failed to provide Ag Valley with a properly designed and usable grain bin which would safely withstand the loads placed upon it by grain to be stored in the facility as contemplated in the agreement."

Ag Valley asserted product liability claims against Chief, Johnson, and Servinsky. The complaint alleged, collectively, that each of these defendants was strictly liable in tort as a result of designing, manufacturing, and selling a dangerous and unsafe product and that each defendant was negligent in "incorporating into [the] grain bin facility the skid loader door." More specifically, the complaint alleged:

> The grain bin storage system was unreasonably danger-
> ous for its intended use and failed to work as safely as an
> ordinary consumer would expect when used in a manner
> intended by the manufacturer or reasonably foreseeable
> by the manufacturer. The Defendants placed the grain
> bin storage system on the market when they knew, or in
> the exercise of reasonable care, should have known the
> grain bin storage system was defective, unreasonably
> dangerous, and unsafe. The skid loader drive door system
> incorporated into the grain bin storage facility was defec-
> tive when the [Titan model CB50] left the possession of
> . . . Chief . . . .

The complaint alleged the specific defects which "caused or contributed to the failure" of the Titan model CB50 included (1) the skid loader door system and its component parts that were insufficient to withstand normal operational forces created by storing grain in the bin and (2) the doorframe and the "flexible grain bin walls [that] were not properly designed to withstand normal operational forces." The complaint also alleged Chief, Johnson, and Servinsky were negligent in "utilizing a skid loader door assembly that was not compatible with the grain bin wall" and that had not been adequately tested.

At different points in the litigation, Servinsky, Heartland, Chief, and Johnson all moved for summary judgment.

### 4. SUMMARY JUDGMENT TO SERVINSKY

Servinsky moved for summary judgment on the merits of the product liability claim, asserting that it had "no involvement in the project which is the subject matter of [the] Complaint and, therefore . . . no duty to the plaintiff." The district court granted Servinsky's motion, finding the evidence was undisputed that Servinsky neither "designed, [nor] manufactured any component[] parts or assisted in any manner with regard to the site specific" Titan model CB50 that collapsed.

### 5. SUMMARY JUDGMENT TO HEARTLAND

Heartland's motion for summary judgment asserted that Ag Valley's claim against Heartland was barred by the 10-year statute of repose set out in § 25-223, which provides in relevant part:

> In no event may any action be commenced to recover damages for an alleged breach of warranty on improvements to real property or deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property more than ten years beyond the time of the act giving rise to the cause of action.

The district court agreed that Ag Valley's claim against Heartland was governed by § 25-223, and it determined the 10-year repose period commenced running in November 2007. Because Ag Valley's lawsuit was filed more than 10 years later, the court concluded the claim against Heartland was barred by the statute of repose, and it granted summary judgment in Heartland's favor.

### 6. SUMMARY JUDGMENT TO CHIEF AND JOHNSON

At separate times, Chief and Johnson each moved for summary judgment, arguing the product liability claims against them were barred by the 10-year statute of repose in § 25-224, which provides in pertinent part:

(2)(a) Notwithstanding subsection (1) of this section or any other statutory provision to the contrary, any product liability action . . . shall be commenced as follows:

(i) For products manufactured in Nebraska, within ten years after the date the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption; or

(ii) For products manufactured outside Nebraska, within the time allowed by the applicable statute of repose, if any, of the state or country where the product was manufactured, but in no event less than ten years. If the state or country where the product was manufactured does not have an applicable statute of repose, then the only limitation upon the commencement of an action for product liability shall be as set forth in subsection (1) of this section.

Chief moved for summary judgment before Johnson did, and Chief's motion was taken up first. In opposing Chief's motion, Ag Valley offered the affidavit of its expert, Chris Wortmann, a licensed physical engineer who inspected the grain bin after the collapse. Wortmann's affidavit set out his opinion on the cause of the bin collapse. Summarized, Wortmann's testimony identified several deficiencies in how Johnson designed and manufactured the skid loader door assembly, and he identified several deficiencies in how Chief incorporated the door system into the grain bin, including how the doorframe was attached to the metal sheets of the bin system. Ultimately, it was Wortmann's opinion that "[i]f the skid loader door system had not been installed, [the] grain bin would not have sustained a catastrophic failure."

Ag Valley relied on Wortmann's opinions to argue that for purposes of the repose period in § 25-224, the "product which allegedly caused the personal injury, death, or damage"[1] was the skid loader door, not the Titan model CB50 system. And, because the skid loader door had been manufactured

---

[1] § 25-224(2)(a)(i).

by Johnson in Michigan, Ag Valley argued that Michigan's statute of repose should be applied to the product liability claim, rather than Nebraska's.

In separate orders, the court granted summary judgment in favor of Chief and Johnson. In both orders, the district court examined the product liability allegations in Ag Valley's complaint—and the evidence adduced—and determined "the product" for purposes of applying § 25-224 was the Titan model CB50 system, and not just the skid loader door incorporated therein. The court found the Titan model CB50 system was manufactured by Chief in Nebraska, and it applied the 10-year repose period set out in § 25-224(2)(a)(i). It found the Titan model CB50 system was first sold to Ag Valley for use no later than November 1, 2007 (the date the grain facility was placed into service), and concluded that because the product liability claims against Chief and Johnson were filed more than 10 years after that date, the claims were barred by the statute of repose.

In its summary judgment order as to Chief, the district court also made an alternative finding that even if the relevant product for purposes of the statute of repose was considered to be just the skid loader door, the applicable Michigan statute of repose still barred Ag Valley's claim. Because this opinion does not ultimately address the court's alternative finding, we do not elaborate on the court's alternative reasoning.

### 7. Other Parties Dismissed

During the course of the litigation, all other named defendants were dismissed. As such, when the court entered summary judgment in favor of Johnson on September 1, 2020, that order had the effect of resolving all remaining claims and issues before the district court. Ag Valley filed this timely appeal, which we moved to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Ag Valley assigns, consolidated and restated, that the district court erred by (1) granting summary judgment to

Servinsky when there was a genuine issue of material fact regarding the extent of Servinsky's involvement in designing the skid loader door; (2) applying the statute of repose in § 25-223, rather than § 25-224, to Ag Valley's claim against Heartland; and (3) resolving a disputed question of material fact on summary judgment "by deciding as a matter of law what the relevant product was for purposes of" the statute of repose in § 25-224(2)(a).

## III. STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[3]

[2] Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.[4]

[3] The determination of which statute of repose applies is a question of law.[5]

---

[2] *Bohling v. Bohling*, 309 Neb. 625, 962 N.W.2d 224 (2021).

[3] *Id*.

[4] *Porter v. Knife River, Inc.*, 310 Neb. 946, 970 N.W.2d 104 (2022). See *Moore v. Nebraska Acct. & Disclosure Comm.*, 310 Neb. 302, 965 N.W.2d 564 (2021).

[5] See, *Hike v. State*, 297 Neb. 212, 899 N.W.2d 614 (2017); *Spilker v. City of Lincoln*, 238 Neb. 188, 469 N.W.2d 546 (1991). See, also, *Ehrenfelt v. Janssen Pharmaceuticals, Inc.*, 737 Fed. Appx. 262 (6th Cir. 2018) (holding which statute of repose applies is discrete, purely legal issue based on principles of statutory interpretation).

## IV. ANALYSIS

### 1. Claim Against Servinsky
### Properly Dismissed

Ag Valley's operative complaint alleged identical theories of strict liability and negligence against Servinsky, Chief, and Johnson. In moving for summary judgment, Servinsky asserted that it had no involvement in designing or manufacturing either the Titan model CB50 system or the skid loader door incorporated into that system and that therefore, it was entitled to judgment as a matter of law.

[4] The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial.[6] If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[7]

In support of summary judgment, Servinsky offered the affidavit of its owner, who stated that Servinsky had a consulting agreement with Johnson "based on a project by project retention," but that Johnson never asked Servinsky to provide engineering services for the construction project at the Edison facility. Servinsky's owner specifically averred that Servinsky "did not either design or manufacture[] component parts or assist in any manner with regard to the site specific [Titan model CB50] which was constructed in Edison, Nebraska." As support for the statement that Servinsky did not provide engineering services regarding the subject door, the owner's affidavit pointed out that Johnson's project drawings of the subject skid loader door, dated May 15, 2007, "were not prepared, approved or stamped for construction by Servinsky nor any other structural engineer for the site specific project." This evidence, if uncontroverted, was sufficient

---

[6] *Dondlinger v. Nelson*, 305 Neb. 894, 942 N.W.2d 772 (2020).

[7] *Id*.

to make out a prima facie case entitling Servinsky to judgment as a matter of law on the product liability claims alleged by Ag Valley.

In an effort to create a genuine issue of material fact regarding Servinsky's involvement in the design of the subject skid loader door, Ag Valley offered the affidavit of the former owner of Johnson, who averred that "for many years, beginning in the early 1990s" Servinsky provided "professional engineering services" to Johnson for the development of its "product lines." The affidavit stated generally that Johnson utilized Servinsky's engineering services in 2007, but did not say for which project. The affidavit also stated generally that Servinsky had calculated stress loads for "skid loader doors and for other [Johnson] products." But the affidavit did not include facts which controverted Servinsky's evidence that it provided no engineering services for the "site specific" skid loader door, or for any other component part of the Titan model CB50 installed at the Edison facility. On appeal, Ag Valley cites us to portions of deposition testimony given by Johnson's former owner, but that deposition was not offered or received into evidence in opposition to Servinsky's motion for summary judgment, and thus, it has no bearing on the correctness of the court's summary judgment ruling.

On the evidence adduced, the district court found there was no genuine factual dispute that "Servinsky did not design, manufacture component parts[,] or assist in any manner with regard to the site specific 155′ diameter tank which . . . is the subject matter of this case." Servinsky's motion for summary judgment was therefore granted, and the claims against Servinsky were dismissed.

On appeal, Ag Valley contends this was error, arguing there was a factual dispute over the extent of Servinsky's involvement with the design of the skid loader door which should have precluded summary judgment. Ag Valley points to evidence that Servinsky's engineering services included calculating stress loads for Johnson products and component parts

and to evidence that Servinsky provided engineering services to Johnson during the same calendar year the subject skid loader door was manufactured. From this evidence, Ag Valley suggests it is reasonable to infer that Servinsky may have been "responsible for any number of design decisions, including possibilities such as the underlying door design, or the specifications of materials,"[8] and that Servinsky "could have designed the skid loader door system that was manufactured and sold" by Johnson.[9]

[5] Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment.[10] Even viewed in the light most favorable to Ag Valley and giving Ag Valley the benefit of all reasonable inferences deducible from the evidence,[11] the general statements in the affidavit offered by Ag Valley suggesting Servinsky "could have designed" the skid loader door system at issue amount to sheer speculation and do not create a genuine issue of fact. In other words, Servinsky's evidence that it had no involvement in the design or manufacturing of the skid loader door or any other component part of the Titan model CB50 sold to Ag Valley stands uncontroverted. On this record, the district court correctly concluded that Servinsky was entitled to summary judgment as a matter of law on Ag Valley's product liability claim.[12]

## 2. CLAIM AGAINST HEARTLAND BARRED BY STATUTE OF REPOSE IN § 25-223

Heartland was the general contractor for the Edison grain facility construction project, including installation of the

---

[8] Brief for appellant at 37-38.

[9] *Id.* at 38.

[10] *Bohling, supra* note 2; *Dondlinger, supra* note 6.

[11] See *Bohling, supra* note 2.

[12] Accord *Marksmeier v. McGregor Corp.*, 272 Neb. 401, 722 N.W.2d 65 (2006).

Titan model CB50 system. It is undisputed that Heartland completed construction on the Edison facility on November 1, 2007, and that Ag Valley issued final payment on the project on November 30. The Titan model CB50 collapsed on August 6, 2017, and Ag Valley filed suit on March 20, 2018. The district court applied the 10-year statute of repose set out in § 25-223 and concluded Ag Valley's claim against Heartland was barred.

On appeal, Ag Valley generally concedes that if the district court was correct in applying the 10-year statute of repose in § 25-223, which governs builders and contractors, its claim against Heartland is barred. But Ag Valley argues the district court should have applied the product liability statute of repose in § 25-224. We disagree.

Section 25-224 applies to "all product liability actions," and Neb. Rev. Stat § 25-21,180 (Reissue 2016) defines a product liability action as

> *any action brought against a manufacturer, seller, or lessor of a product*, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formulation, installation, preparation, assembly, testing, packaging, or labeling of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or intended use of any product, or the failure to provide proper instructions for the use of any product.

(Emphasis supplied.)

[6] Because the repose provisions in § 25-224 apply to "product liability actions," they necessarily apply to claims against manufacturers, sellers, and lessors of products.[13]

_____

[13] See, also, § 25-224(5) (providing that no product liability action alleging strict liability in tort may be filed against seller "unless such seller is also the manufacturer of such product or the manufacturer of the part thereof claimed to be defective").

Heartland was not the manufacturer, seller, or lessor of the Titan grain bin; it was the general contractor responsible for installing and constructing the Titan model CB50 system. As against Heartland, Ag Valley's only claim was that Heartland "breached its agreement to properly design and construct the grain bin facility in a workman like manner." When claims of defective construction are brought against contractors and builders, we have consistently applied the limitations periods set out in § 25-223, whether the claims were based on theories of contract, tort, fraud, or breach of warranty.[14] We find no error in the district court's application of § 25-223 to the claim alleged against Heartland.

### 3. Product Liability Claims Against Chief and Johnson Barred by Statute of Repose in § 25-224

Ag Valley styled its identical claims against Chief and Johnson as "product liability" claims, and neither Chief nor Johnson dispute Ag Valley's characterization of the Titan model CB50 system as a product, rather than an improvement to realty. For purposes of our statute of repose analysis, we accept this characterization.[15] We have generally applied the statute of repose in § 25-224(2)(a) to product liability claims, even when the product was used in constructing

---

[14] See, e.g., *McCaulley v. C L Enters.*, 309 Neb. 141, 959 N.W.2d 225 (2021); *Fuelberth v. Heartland Heating & Air Conditioning*, 307 Neb. 1002, 951 N.W.2d 758 (2020); *Adams v. Manchester Park*, 291 Neb. 978, 871 N.W.2d 215 (2015); *Andres v. McNeil Co.*, 270 Neb. 733, 707 N.W.2d 777 (2005); *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985).

[15] See *Kubik v. Kubik*, 268 Neb. 337, 683 N.W.2d 330 (2004) (noting appellate court generally disposes of case on theory presented in district court).

improvements to realty.[16] And while we are aware of authority elsewhere which supports applying the statute of repose for improvements to real property when a product liability claim is brought against the manufacturer of a prefabricated building which becomes an improvement to realty,[17] no party has urged the adoption of similar reasoning in Nebraska. We therefore leave for another day consideration of the circumstances, if any, under which the builder's statute of repose in § 25-223 may apply to a claim against the manufacturer of an allegedly defective premanufactured building

---

[16] See, *Farber v. Lok-N-Logs, Inc.*, 270 Neb. 356, 701 N.W.2d 368 (2005) (applying § 25-224 to product liability claim against manufacturers of chemical wood preservatives and treated logs used in construction of barracks); *Murphy v. Spelts-Schultz Lumber Co.*, 240 Neb. 275, 481 N.W.2d 422 (1992) (applying § 25-224 to product liability claim against designer/manufacturer/seller of allegedly defective roof trusses used to construct home); *Witherspoon, supra* note 14 (holding § 25-224 applied to product liability claim against manufacturer/supplier of allegedly defective pipe used in home construction). But see *Smith v. Butler Manuf. Co.*, 230 Neb. 734, 433 N.W.2d 493 (1988) (applying statute of repose in § 25-223, rather than § 25-224, to claims of negligent design brought against manufacturer of prefabricated hog confinement building).

[17] See, *Theunissen v. GSI Group*, 109 F. Supp. 2d 505 (N.D. Miss. 2000) (holding that product liability claim against designer and manufacturer of grain bin structure and component parts was subject to construction statute of repose because grain bin was improvement to real property); *Two Denver Highlands v. Stanley Structures*, 12 P.3d 819 (Colo. App. 2000) (applying construction statute of repose, not product liability statute of repose, to claim against manufacturer of allegedly defective product used in design and construction of improvement to real property); *Bellemare v. Gateway Builders, Inc*., 420 N.W.2d 733 (N.D. 1988) (finding 10,000 bushel grain bin anchored to cement slab was improvement to real property, not product, for purposes of statute of repose); *Craftsman Builder's Supply v. Butler Mfg.*, 974 P.2d 1194 (Utah 1999) (applying builder's statute of repose, not product liability statute of repose, to product liability claim against manufacturer of prefabricated metal building which collapsed 15 years after it was installed). But see *Sonnier v. Chisholm-Ryder Co., Inc.*, 909 S.W.2d 475 (Tex. 1995) (holding builder's statute of repose not intended to grant repose to manufacturers of products annexed to realty).

that, once installed, is annexed to and becomes an improvement to realty.[18]

The parties agree that Ag Valley's product liability claims against Chief and Johnson should be governed by the statute of repose in § 25-224. But they cannot agree how to define "the product" at issue for purposes of that statute. Before summarizing the parties' arguments, we review the relevant statutory scheme.

### (a) § 25-224

In 1978, the Legislature amended § 25-224 to enact a 10-year statute of repose in product liability actions.[19] As originally enacted, subsection (2) of that statute provided in relevant part that "any product liability action [with an exception not relevant here] shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for consumption."[20]

We have said that the Legislature, by enacting the repose provisions in § 25-224(2), has decided as a matter of policy that "in the absence of [a] legislative exception, a product liability defendant should not be subjected to liability 10 years after the product was first sold or leased for use or consumption."[21] We have noted the statute of repose in § 25-224(2) operates "'as a statutory bar independent of the action (or inaction) of the litigants—often before those litigants can even be identified.'"[22] Once the repose period

---

[18] See, generally, 122 A.L.R.5th 1 (2004); 4 American Law of Products Liability 3d § 47:95 (2020).

[19] See 1978 Neb. Laws, L.B. 489, codified as § 25-224(2)(a) (Cum. Supp. 1978).

[20] § 25-224(2) (Cum. Supp. 1978).

[21] *Farber, supra* note 16, 270 Neb. at 367, 701 N.W.2d at 377.

[22] *Id*., quoting *Nesladek v. Ford Motor Co.*, 46 F.3d 734 (8th Cir. 1995).

in § 25-224(2) has lapsed, the manufacturer of the product acquires "a substantive right protected by statute."[23] Indeed, the "effect of the 10-year statute of repose in § 25-224(2) can be to prevent what might otherwise be a cause of action from ever arising."[24]

The "triggering language"[25] under § 25-224(2)(a) requires the court to determine when the product was "first sold or leased for use or consumption." We have said this occurs when possession of the product is first surrendered or relinquished to the consumer for use, not when the product is placed into the stream of commerce.[26]

In 2001, the Legislature amended the repose provisions in § 25-224(2) to distinguish between "products manufactured in Nebraska" and "products manufactured outside Nebraska."[27] Under the amended statute, products manufactured in Nebraska are still subject to a 10-year statute of repose which begins to run on the date "the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption."[28] But for products manufactured outside Nebraska, the court must determine if the state or country of manufacture has an applicable statute of repose; if it does, that repose period applies unless it is shorter than 10 years.[29] And if the state or country where the product was manufactured has no applicable statute of repose, then there is no repose period under § 25-224(2)(a)(ii); in that event, the only time

[23] *Id*. at 366, 701 N.W.2d at 376.

[24] *Id*. See *Gillam v. Firestone Tire & Rubber Co*., 241 Neb. 414, 489 N.W.2d 289 (1992).

[25] *Farber, supra* note 16, 270 Neb. at 362, 701 N.W.2d at 374.

[26] See *Farber, supra* note 16; *Witherspoon, supra* note 14.

[27] 2001 Neb. Laws, L.B. 489, § 1.

[28] § 25-224(2)(a)(i) (Reissue 2016).

[29] See § 25-224(2)(a)(ii).

limit applicable to the plaintiff's action will be the 4-year statute of limitations set out in § 25-224(1).[30]

(b) Summary of Parties' Arguments

In this appeal, the parties agree that the skid loader door is a component part of the Titan model CB50 system that was sold to Ag Valley, and not a stand-alone product sold to Ag Valley. They also agree that Chief manufactured the Titan model CB50 system in Nebraska and that Johnson manufactured the skid loader door in Michigan. But the parties do not agree whether, for purposes of applying the statute of repose, "the product" under consideration is the Titan model CB50 system with all its component parts or the skid loader door individually. They describe this as a dispute over "the relevant product"[31] for purposes of § 25-224(2). And they generally approach the issue as one to be resolved based on the pleadings and the evidence of causation.

Chief and Johnson contend the relevant product is the entire Titan model CB50 system. They point out that Ag Valley's operative complaint, and its expert witness, describe defects not just involving the skid loader door, but also involving how that component part was incorporated into the rest of the product. Because the Titan model CB50 system was manufactured in Nebraska, Chief and Johnson argue this product liability action is governed by the 10-year repose period in § 25-224(2)(a)(i), which began to run on the date the product was first sold for use or consumption. Because Ag Valley paid for and began using the Titan model CB50 system in November 2007, they contend the 10-year repose period had expired by the time Ag Valley filed its product liability action in March 2018.

---

[30] *Id.*

[31] See, brief for appellant at 14; brief for appellee Chief at 15; brief for appellee Johnson at 23.

Seeking to avoid Nebraska's 10-year repose period, Ag Valley contends the relevant product is not the entire Titan model CB50 system, but just the skid loader door which was manufactured in Michigan. Ag Valley argues that its pleadings and its evidence show that the skid loader door is the defective condition that proximately caused the bin to collapse, and it argues that both Chief and Johnson were responsible for this defective condition. Ag Valley argues that Michigan has not enacted a specific product liability statute of repose, so the only time limit on commencing this product liability claim is the 4-year statute of limitations which commenced running on the date the damage occurred.[32] Because Ag Valley's March 2018 complaint was filed within 4 years after the grain bin collapse, Ag Valley argues that its product liability action was timely filed.

The district court generally agreed with Chief and Johnson, and it held that for purposes of the product liability statute of repose in § 25-224(2)(a), the relevant product is the entire Titan model CB50 system, including all its component parts. Ag Valley assigns this as error, arguing that when the court determined the relevant product was the grain bin as a whole, it improperly decided a disputed question of fact. We disagree.

[7] Although the parties and the district court generally approached identifying the relevant product as a matter to be determined from the pleadings and the evidence on causation, we view it instead as a matter of statutory construction. The parties' disagreement turns on the meaning of "the product" as that term is used in § 25-224(2)(a)(i) and (ii). And thus, the interpretation of a statute presents a question of law, not a question of fact.[33]

---

[32] See § 25-224(2)(a)(ii).

[33] See *Whittle v. State*, 309 Neb. 695, 962 N.W.2d 339 (2021) (statutory interpretation question of law).

(c) Meaning of "[T]he [P]roduct"

Both subsections (a)(i) and (a)(ii) of § 25-224(2) refer to "the product" without expressly defining the term. We have applied the § 25-224(2) repose period in many cases over the past 40 years, and our opinions often describe "the product" at issue, without explaining how we identified it.[34] Until this case, identifying the product for purposes of § 25-224(2) was simply not a matter of controversy. In this appeal, the parties' competing definitions of "the product" present us with a question of statutory interpretation.

[8-10] When construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[35] A court must reconcile different provisions of the statute so they are consistent, harmonious, and sensible.[36] And in construing a statute, the court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which

---

[34] See, e.g., *Marksmeier, supra* note 12, 272 Neb. at 406, 722 N.W.2d at 68 (describing product at issue as "T-shirt"); *Farber, supra* note 16, 270 Neb. at 360, 701 N.W.2d at 372-73 (describing products at issue as "liquid penta" and "penta-treated logs"); *Divis v. Clarklift of Nebraska*, 256 Neb. 384, 385, 590 N.W.2d 696, 698 (1999) (describing product at issue as "forklift"); *Radke v. H. C. Davis Sons' Mfg. Co.*, 241 Neb. 21, 22, 486 N.W.2d 204, 205 (1992) (describing product at issue as "'Davis Precision Mix Batch Mixer, Model No. S-20'"); *Gillam, supra* note 24, 241 Neb. at 415, 489 N.W.2d at 291 (describing product at issue as "'RH5 degree' multipiece wheel" which "consisted of two components"); *Spilker, supra* note 5, 238 Neb. at 190, 469 N.W.2d at 547 (describing product at issue as "outdoor switchgear equipment"); *Witherspoon, supra* note 14, 219 Neb. at 118, 362 N.W.2d at 38 (describing product at issue as "pipe supplying water to . . . house").

[35] *Moore, supra* note 4.

[36] See *id.*

best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[37]

As originally enacted in 1978, the repose provisions in § 25-224(2) provided that any product liability action, except one governed by the Uniform Commercial Code, "shall be commenced within ten years after the date when the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption."[38] Since its amendment in 2001, § 25-224(2)(a) has distinguished between products manufactured in Nebraska and products manufactured outside Nebraska, but for products manufactured in Nebraska the statute still provides that any product liability action shall be commenced "within ten years after the date the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption."[39]

Because Nebraska's statute of repose has always been triggered not by the nature of the alleged defects or the proximate cause of the alleged injuries, but by when the product was first relinquished to the consumer for use, there has never been any question that when § 25-224(2) references "the product which allegedly caused the personal injury, death, or damage," it is referring to the product that was placed on the market and sold or leased to the consumer for use. This commonsense understanding of "the product" is consistent with our use of the term in prior cases applying the statute of repose,[40] and it is consistent with how we have described "the product" when reciting the material elements of a product liability claim based on an alleged defective condition:

---

[37] *McCoy v. Albin*, 298 Neb. 297, 903 N.W.2d 902 (2017).

[38] § 25-224(2) (Cum. Supp. 1978).

[39] § 25-224(2)(a)(i) (Reissue 2016).

[40] See cases cited *supra* note 34.

In a products liability action based on defect, a plaintiff must prove by a preponderance of the evidence that (1) the defendant *placed the product on the market for use* and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) *the product was in a defective condition when it was placed on the market* and left the defendant's possession; (3) the defect is the proximate or a proximately contributing cause of the plaintiff's injury [or damage] sustained while the product was being used in a way and for the general purpose for which it was designed and intended; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) the plaintiff's damages were a direct and proximate result of the alleged defect. [41]

Construing "the product" as used in § 25-224(2)(a) to mean the product that was placed on the market and sold or leased for consumer use is also consistent with how the term "product" is used elsewhere in Nebraska's product liability statutes. [42]

Moreover, when "the product" in § 25-224(2)(a)(i) and (ii) is properly understood to refer to the completed product that was placed on the market and sold or leased for consumer use, it necessarily includes all of the product's original

---

[41] *Pitts v. Genie Indus.*, 302 Neb. 88, 99, 921 N.W.2d 597, 609 (2019) (emphasis supplied).

[42] See, e.g., § 25-21,180; Neb. Rev. Stat. § 25-21,181 (Reissue 2016); Neb. Rev. Stat. § 25-21,182 (Reissue 2016).

component parts.[43] We see nothing to suggest that when the Legislature amended § 25-224(2) in 2001 to distinguish between products manufactured in Nebraska and products manufactured outside Nebraska, it intended to change the meaning of "the product" for purposes of the statute of repose. The senator who introduced the 2001 amendments to § 25-224(2) explained that the purpose of the amendments was to

> maintain that ten-year limitation for products that are manufactured in Nebraska, but . . . apply the statute of repose for products manufactured outside of Nebraska from the jurisdiction where the products were manufactured. . . . If other states do not care to extend to their manufacturers [the protection of] a statute of repose and we do, then why should our Nebraska consumers not benefit from the application of this concept? Nebraska's manufacturers will not be harmed in the least. There is no detriment to them. But our consumers, injured plaintiffs, will have the benefit of a broader reach . . . .[44]

As such, the legislative intent in amending § 25-224(2) was to ensure that Nebraska manufacturers continue to be protected by a 10-year repose period when sued in a product liability action, but to allow Nebraska consumers to benefit from a

---

[43] See, e.g., *Gillam, supra* note 24, 241 Neb. at 415, 489 N.W.2d at 291 (describing allegedly defective product as "'RH5 degree' multipiece wheel" and noting product consisted of "two components" manufactured by different companies); *Spilker, supra* note 5, 238 Neb. at 190, 469 N.W.2d at 547 (describing product as "outdoor switchgear equipment" and describing defective condition as instruction book which misidentified live high-voltage receptacle as de-energized). Accord *Chief Indus. v. Great Northern Ins. Co.*, 268 Neb. 450, 683 N.W.2d 374 (2004) (finding no error in district court's conclusion that component parts manufactured by third parties were part of manufacturer's "product" for purposes of insurance coverage in product liability suit following grain bin collapse).

[44] Floor Debate, L.B. 489, Judiciary Committee, 97th Leg., 1st Sess. 3844 (Apr. 3, 2001) (remarks of Senator Kermit Brashear).

longer repose period, or perhaps no repose period at all, when the product was manufactured outside Nebraska.

This legislative intent would be defeated by a construction of § 25-244(2)(a) which focuses on the state where the allegedly defective component parts were manufactured, rather than the state where the completed product was manufactured. Under the statutory construction urged by Ag Valley, a Nebraska manufacturer could be deprived of the 10-year statute of repose simply by incorporating an allegedly defective component part manufactured in another state or country. And arguably, under Ag Valley's construction, a single product placed on the market could be subject to several different repose periods, depending on where the allegedly defective component parts were manufactured.

[11] We have no doubt that when the Legislature amended § 25-224(2) to differentiate between repose periods for "products manufactured in Nebraska"[45] and "products manufactured outside Nebraska,"[46] it was fully aware that products manufactured in Nebraska often incorporate component parts manufactured elsewhere. But despite this reality, the plain language of § 25-224(2)(a) describes a binary choice: "the product" which allegedly caused the injury or damage was either manufactured in Nebraska or it was not. Nebraska's product liability statute of repose in § 25-224(2)(a) thus contemplates a single state of manufacture for each product and a single statute of repose for each product.

[12] If the Legislature had wanted the focus of Nebraska's statute of repose to turn on where an allegedly defective component part was manufactured, rather than where the completed product was manufactured, it could have done so. Instead, Nebraska's product liability statute of repose has always been focused on the completed product that was placed on the

---

[45] § 25-224(2)(a)(i).

[46] § 25-224(2)(a)(ii).

market and sold or leased to the consumer. For purposes of Nebraska's statute of repose, it is immaterial where the product's various component parts were manufactured; a claim brought against the manufacturer of a component part will be governed by the same repose period as applies to the manufacturer of the completed product.

[13] To the extent it was not already apparent from the plain language of the statute and our prior cases, we expressly hold that reference to "the product" in § 25-224(2)(a)(i) and (ii) means the product that was placed on the market and sold to the consumer for use or consumption, and it necessarily includes the product's original component parts. This construction is consistent with the plain language of the statute, serves to harmonize the various statutory provisions governing product liability claims, and places on the term a reasonable construction which best achieves the purpose of the statute of repose.

[14] We therefore reject Ag Valley's atomistic definition of "the product," which focuses on the individual component part or parts of the product alleged to be defective. We also necessarily reject any suggestion that the nature of the alleged defect or the proximate cause of the plaintiff's injury or damage can alter the statutory meaning of "the product." Ordinarily, deciding whether a product liability action is barred by the statute of repose will not require the court to consider the merits of the particular claim at all, because the statute of repose operates as a statutory bar independent of the merits of the action.[47] Given the purpose of the product liability statute of repose, our cases applying § 25-224(2) have generally not required judicial analysis of the alleged defects or dangerous conditions, or determination of what proximately caused the plaintiff's injury or damage. Indeed, except where it was necessary to decide whether the 10-year repose period

---

[47] See *Farber, supra* note 16.

began to run anew after the manufacturer refurbished the product,[48] our cases applying § 25-224(2) to bar a plaintiff's product liability action have not turned on the merits of the particular claim at all.[49]

We therefore find no merit to Ag Valley's assignment that the district court erred by concluding the relevant product, for purposes of applying the statute of repose in § 25-224(2)(a), was the Titan model CB50 system, including all its component parts. In this case, the district court correctly identified the relevant product as the Titan model CB50 system. That was the product Chief placed on the market and sold to Ag Valley for its use at the Edison grain facility, and that is the product (including its component parts) which Ag Valley alleges had conditions which were unreasonably dangerous and defective.

---

[48] See *Divis, supra* note 34 (holding that for period of repose to begin anew after product is refurbished by manufacturer, refurbishment must have extended product's useful life, and refurbishment must have been defective and proximately caused plaintiff's injury or damage).

[49] See, *Marksmeier, supra* note 12 (holding Tennessee's 10-year statute of repose barred product liability claim against manufacturer of T-shirt because product was first sold to consumer for use 13 years before plaintiff filed action); *Farber, supra* note 16 (holding § 25-224(2) barred product liability action against chemical manufacturers and manufacturer of chemically treated logs used at worksite because products were delivered for use more than 10 years before suit was filed); *Radke, supra* note 34 (holding § 25-224(2) barred product liability action against manufacturer of commercial mixing machine because product was delivered to consumer for use more than 10 years before action was filed); *Spilker, supra* note 5 (holding § 25-224(2) barred product liability action against manufacturer of outdoor switchgear because consumer took possession of product 22 years before action was filed); *Gillam, supra* note 24 (holding § 25-224(2) barred product liability claim against manufacturers of wheel assembly consisting of two component parts because product was first mounted on truck in 1969 and action was not filed until 1987).

Here, there is no genuine dispute that the Titan model CB50 system was manufactured in Nebraska. As such, Ag Valley's product liability claim against Chief and Johnson is governed by the 10-year repose period in § 25-224(2)(a)(i), and the district court correctly determined the claim is barred. Because we affirm the district court's summary judgment to Chief and Johnson under § 25-224(2)(a)(i), we do not reach Ag Valley's assignments of error related to the district court's alternative holding analyzing Michigan law.[50]

## V. CONCLUSION

Finding no merit to any of the assigned errors, the judgment of the district court is affirmed.

AFFIRMED.

PAPIK, J., not participating.

---

[50] See *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021) (appellate court not obligated to engage in analysis not necessary to adjudicate case).